FEATHERSTON v STEINHOFF

Docket No. 199221. Submitted October 7, 1997, at Detroit. Decided November 25, 1997, at 9:25 A.M. Leave to appeal sought.

Karen K. Featherston brought an action in the Genesee Circuit Court against A. Lee Steinhoff, alleging breach of contract based on the defendant's alleged promises during their relationship, including cohabitation for eight years, regarding the plaintiff's financial security. The defendant denied the allegations and sought joint legal and physical custody of the parties' minor child. The court, Judith A. Fullerton, J., found an express and implied contract existed between the parties whereby the defendant agreed to provide financial support and security for the plaintiff, her two daughters, and the parties' son. The court awarded the plaintiff the house in which she lived, a car, $150,000, and $10,000 in attorney fees. The court ordered that the plaintiff retain legal and physical custody of the parties' son, granted the defendant reasonable visitation, and ordered the defendant to pay child support. The defendant appealed.

The Court of Appeals held:

1. The court erred in finding a contract, either express or implied. There is a presumption that services rendered during a meretricious relationship are gratuitous. To overcome that presumption, the plaintiff needed to show that she expected compensation from the defendant at the time she rendered the services and that the defendant expected to pay for them. She failed to do so. The judgment in favor of the plaintiff with regard to the claim of breach of contract must be reversed.

2. The defendant did not preserve for appellate review an argument that the trial court should have deviated from the child support guidelines.

3. The trial court had the authority to award the plaintiff attorney fees incurred in her defense of the defendant's petition for custody but not with regard to the plaintiff's action for breach of contract. The matter must be remanded for a determination whether an award of attorney fees was necessary to enable the plaintiff to defend the custody action and, if so, an award of those fees.

Affirmed in part, reversed in part, and remanded.

1. HUSBAND AND WIFE — COMMON-LAW MARRIAGES — MERETRICIOUS RELATION-
   SHIPS — PROPERTY RIGHTS — EXPRESS OR IMPLIED AGREEMENTS.
   Michigan does not recognize common-law marriages arising after Jan-
   uary 1, 1957; although those engaged in meretricious relationships
   do not enjoy the property rights afforded legally married couples,
   an agreement either express or implied in fact that was made dur-
   ing a meretricious relationship may be enforced upon proof of
   additional independent consideration (MCL 551.2; MSA 25.2).

2. CONTRACTS — MERETRICIOUS RELATIONSHIPS — SERVICES.
   Services rendered during a meretricious relationship are presumably
   gratuitous; a plaintiff may overcome the presumption by showing
   that the plaintiff expected compensation from the defendant at the
   time the plaintiff rendered the services and that the defendant
   expected to pay for the services; the trier of fact resolves the ques-
   tion by considering all the circumstances, including the type of ser-
   vices rendered, the duration of the services, the closeness of the
   relationship of the parties, and the express expectations of the
   parties.

*Michael J. Devine*, for the plaintiff.

*Bookholder & Bassett, P.C.* (by *Scott Bassett*), for
the defendant.

Before: CORRIGAN, C.J., and GRIFFIN and HOEKSTRA,
JJ.

CORRIGAN, C.J. Defendant appeals by right from the
judgment on plaintiff's claim for breach of contract
and defendant's petition for custody of the parties'
minor child. We affirm the award of child support,
reverse the judgment for plaintiff on her breach of
contract claim, and remand for further proceedings
regarding attorney fees.

Although plaintiff and defendant cohabited for
eight years, they never married. The parties began liv-
ing together six months after plaintiff gave birth to
their son, Kyle. Plaintiff's two daughters also resided
with the couple. The parties moved often, and resided
for a period in a home defendant designed and con-

structed (the Horton Rd. property). Defendant provided most of the financial support for the household during the relationship. Plaintiff cared for the children, performed household duties, and either attended school or worked at various jobs. The parties did not share a bank account, and plaintiff did not contribute toward the purchase of any property. Shortly before the parties ended their relationship, plaintiff and the children moved into a duplex (the Hagel St. property), one of several properties owned by defendant. Defendant never lived in the duplex. Plaintiff and her children continued to live in the duplex after the parties ended their relationship. In addition to furnishing plaintiff with lodging, defendant continued to provide financial support for plaintiff and her children.

Plaintiff commenced this action for breach of contract and common-law marriage,[1] alleging that defendant made repeated promises during their relationship regarding her financial security and held them out as a family unit. Plaintiff testified that defendant promised her that he would support, or "take care of," her and her children, provide "a roof over [her and her children's] heads," and pay for Kyle's college education. Plaintiff interpreted defendant's statements and actions as meaning that he would ensure her financial security for "an indefinite period of time." She added that defendant referred to the Horton Rd. property as "our home" and promised that he would leave it to her in his will. Plaintiff maintained that she was entitled to a "cash settlement" because defendant "put

---

[1] Plaintiff voluntarily dismissed her common-law marriage claim at the beginning of trial.

[them] out as a family unit," even though they were not married.

Defendant denied the allegations and sought joint legal and physical custody of Kyle and a determination of child support. Defendant admitted that he promised to provide "a roof over [plaintiff's] head" as long as they remained a couple and told plaintiff that he "wouldn't throw her out on the street" if the relationship ended. He maintained, however, that he did not promise or imply that he would support plaintiff for the rest of her life or tell plaintiff that she would be financially secure. Defendant stated that he continued to pay for plaintiff's lodging, car, and other household expenses after their relationship had ended because he was concerned for the children's welfare. Further, defendant denied referring to the Horton Rd. property as "our home."

The trial court found an express and implied contract existed between the parties under which defendant agreed to provide financial support and security for plaintiff and her children. The court stated:

> [T]he defendant not only expressedly [sic] but impliedly has demonstrated the commitment that he has made to provide for [plaintiff] and her children, as well as the children—the child, Kyle, born to the two of them.

The court found that plaintiff quit school, performed household services, and worked for defendant in his business ventures in reliance on defendant's promises of financial support. The court awarded plaintiff the Hagel St. property free of encumbrances, a car free of encumbrances, $150,000, and $10,000 in attorney fees. Regarding the custody issue, the court denied defendant's petition for a change in custody, ordering that

plaintiff retain legal and physical custody of Kyle. The court granted defendant reasonable visitation and ordered him to pay $700 weekly in child support.

Defendant first argues that the trial court erred in finding an express and implied contract between the parties. We agree. This Court reviews the court's findings of fact in a bench trial for clear error. *Morris v Clawson Tank Co*, 221 Mich App 280, 284; 561 NW2d 469 (1997). A finding is clearly erroneous when, although evidence supports it, this Court is left with a firm conviction that the trial court made a mistake. *Andrews v Pentwater Twp*, 222 Mich App 491, 493; 563 NW2d 713 (1997).

Michigan does not recognize common-law marriages arising after January 1, 1957. MCL 551.2; MSA 25.2. Those engaged in meretricious relationships do not enjoy property rights afforded a legally married couple. *Carnes v Sheldon*, 109 Mich App 204, 211; 311 NW2d 747 (1981). This Court will, however, enforce an agreement made during the relationship upon proof of additional independent consideration. *Id.*; *Tyranski v Piggins*, 44 Mich App 570, 573-574; 205 NW2d 595 (1973). The agreement must be either express or implied in fact. This Court will not allow recovery based on contracts implied in law or quantum meruit because to do so would essentially resurrect common-law marriage. *Carnes, supra* at 216-217; *Roznowski v Bozyk*, 73 Mich App 405, 408-409; 251 NW2d 606 (1977).

In this case, the trial court found both an express and implied agreement. In response to this Court's direct question during oral argument whether an express contract existed, however, plaintiff's counsel stated that the contract is implied in fact and thereby

conceded that the trial court erred in finding an express agreement. We therefore confine our review to the court's finding regarding an agreement implied in fact.

Where the parties do not explicitly manifest their intent to contract by words, their intent may be gathered by implication from their conduct, language, and other circumstances attending the transaction. *Temborius v Slatkin*, 157 Mich App 587, 596; 403 NW2d 821 (1986). Nevertheless, services rendered during a meretricious relationship are presumably gratuitous. *Roznowski, supra* at 408. To overcome this presumption, plaintiff must show that she expected compensation from defendant at the time she rendered the services and that defendant expected to pay for them. *Id.; In re Estate of Morris*, 193 Mich App 579, 582; 484 NW2d 755 (1992). The trier of fact resolves this question by considering "all the circumstances, including the type of services rendered, the duration of the services, the closeness of the relationship of the parties, and the express expectations of the parties." *In re Lewis Estate*, 168 Mich App 70, 75; 423 NW2d 600 (1988); see also *Roznowski, supra* at 409.

In this case, plaintiff was self-employed as a housecleaner and receiving child support and public assistance when she and defendant began their relationship. She enrolled in college shortly before the parties began living together. Three years later, plaintiff quit school and, with defendant's encouragement, accepted a job selling advertising for a magazine, Country Folk Art. Plaintiff resigned after one year and began working for Country Heirloom Folk Art Shows, a business started by defendant and a partner to com-

pete with Country Folk Art. The parties agree that plaintiff initially did not receive wages for her work, but dispute the amount of time plaintiff worked for no pay, with plaintiff maintaining one year and defendant asserting one month. Plaintiff acknowledg that the business paid her approximately $200 weekly during the final 1½ to 2 years of its operation. After Country Heirloom Folk Art went out of business, plaintiff worked part-time as a receptionist at Barry Young & Company, where defendant worked as an independent contractor. The company paid plaintiff $100 weekly for her services. Plaintiff also ran her own business selling hand-painted clothing. At the time of trial, plaintiff earned approximately $10,200 yearly working at a hair salon and attended college.

The trial court found adequate consideration to support an agreement because:

> [I]n reliance upon defendant's promises of financial support and security for herself and all three children, [plaintiff] did quit school and she has provided consideration and work not only on the home front in the traditional home ways of cooking and cleaning, laundry, shopping and caring for children and ferrying children hither and yon, but also at the office and also at a new business that the defendant established, and she, in reliance upon the opportunity that the defendant indicated he thought would be good—a good financial opportunity for her, gave up a job that she had with Country Folk Art and took on employment at this Heirloom Folk Art. . . .
>
> Apparently the business—the defendant started to apparently compete with her prior employer and for whatever reason went bad or went sour, and the opportunity for the financial growth did not ripen or mature and that opportunity, as I said, did not pan out and she had left the other job where she was traveling and apparently there have been no other similar financial endeavors or business opportunities

> offered to the plaintiff to participate in, in terms of developing the real estate properties, but the main opportunity offered to her by him was the Country Heirloom Folk Art.

The trial court clearly erred in finding an agreement implied in fact because plaintiff did not overcome the presumption that she gratuitously performed services for defendant. The trial court erroneously focused on plaintiff's reliance on defendant's alleged promises because reliance is not the pertinent inquiry. To overcome the presumption that she rendered the services gratuitously, plaintiff must show that she expected compensation from defendant at the time she rendered services for defendant and that defendant expected to pay for them. *Roznowski, supra* at 408. Consequently, plaintiff's decisions to quit school and resign from her position at Country Folk Art do not support an agreement implied in fact because they do not involve services rendered for defendant. See *id.*

Plaintiff's performance of household services, standing alone, does not overcome the presumption that the services were gratuitous. See *Carnes, supra* at 213-214. Plaintiff's work for Country Heirloom Folk Art during its final two years of operation and subsequent work for the real estate business likewise do not support an agreement implied in fact because she received wages for her services. The agreement must therefore rest on plaintiff's services without pay for Country Heirloom Folk Art during its initial period of operation. Plaintiff testified, however, that she knew at the time she rendered the services that she would not receive compensation. Further, plaintiff did not seek wages or the value of the services, but rather sought financial security for an indeterminate period.

Because plaintiff did not expect compensation from defendant at the time she rendered services and defendant did not expect to pay for the services, plaintiff did not overcome the presumption that these services were gratuitous. *Id.*; *Estate of Morris, supra* at 582. Accordingly, the trial court clearly erred in finding an agreement implied in fact in this case. We therefore reverse the judgment in favor of plaintiff on her breach of contract claim.

Defendant next argues that the trial court abused its discretion in awarding child support because it did not deviate from the child support guidelines. Defendant did not preserve this issue by raising it below. *Burgess v Clark*, 215 Mich App 542, 548; 547 NW2d 59 (1996). Defendant disputed the proper amount of support under the guidelines rather than arguing that the court should deviate from the guidelines. Because defendant did not raise this issue below, we decline to review it.[2] *Garavaglia v Centra, Inc*, 211 Mich App 625, 628; 536 NW2d 805 (1995).

Defendant further argues that the trial court abused its discretion in awarding attorney fees. We agree. This Court reviews the trial court's decision to award attorney fees for an abuse of discretion. *Auto Club Ins Ass'n v State Farm Ins Cos*, 221 Mich App 154, 167; 561 NW2d 445 (1997). Generally, a party may not recover attorney fees, as either costs or damages, "unless recovery is expressly authorized by statute, court rule, or a recognized exception." *Burnside v*

---

[2] We note that defendant prematurely raises this issue. In addition to entering the judgment, the trial court referred the support issue to the friend of the court for a recommendation. Defendant may raise his arguments regarding the guidelines in that forum and then urge the court to modify its support order.

*State Farm Fire & Casualty Co*, 208 Mich App 422, 427; 528 NW2d 749 (1995). Here, the court had authority to award plaintiff attorney fees incurred in her defense of defendant's petition for custody, but not those pertaining to the contract action. *Id.*; MCR 3.206(C)(2); MCR 3.201(A); MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* Under MCR 3.206(C)(2), plaintiff may recover reasonable fees necessary to defend the domestic relations action if she is unable to bear the expense of the action and defendant is able to pay. See *Thames v Thames*, 191 Mich App 299, 310; 477 NW2d 496 (1991). The trial court, however, did not explain whether its award included attorney fees incurred in the custody action, the contract action, or both. We therefore remand for a determination whether an award of attorney fees was necessary to enable plaintiff to defend the custody action, and, if so, a determination of the reasonable fees plaintiff incurred in defense of that action.

In light of our determination that the trial court clearly erred in granting plaintiff recovery for breach of contract, we do not address defendant's remaining argument that the court improperly awarded statutory judgment interest.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.