# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN C. HRIT,

Plaintiff-Appellant,

v

MAUREEN J. MCKEON,

Defendant-Appellee.

UNPUBLISHED
February 3, 2015

No. 317988
Oakland Circuit Court
LC No. 2013-133374-CK

Before: JANSEN, P.J., and TALBOT and SERVITTO, JJ.

PER CURIAM.

In this action to partition real property, plaintiff Susan C. Hrit (plaintiff) appeals by right the circuit court's order of August 14, 2013, granting summary disposition in favor of defendant Maureen J. McKeon (defendant) pursuant to MCR 2.116(C)(8). Plaintiff also challenges the circuit court's denial of her motion to amend the complaint. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I

Defendant's family had owned a certain parcel of real property—commonly known as 63 Hulbert, White Lake, Michigan (the property)—for many years. The property is situated on Oxbow Lake in White Lake Township. Defendant purchased the property from her mother in 1986. In 1989, defendant razed the house on the property; she subsequently built a new house on the property in 1990.

Plaintiff and defendant were involved in a same-sex relationship for more than 30 years. In 1994, plaintiff began living with defendant in the house on the property. By way of a warranty deed executed on April 13, 2003, defendant conveyed the property to herself and plaintiff "as joint tenants with full rights of survivorship." Thereafter, plaintiff and defendant each owned an undivided one-half interest in the property, holding joint life estates with dual contingent remainders. See *Albro v Allen*, 434 Mich 271, 275-276; 454 NW2d 85 (1990).

On April 11, 2013, plaintiff commenced the present action in the Oakland Circuit Court by filing a one-count complaint to partition the property. Plaintiff alleged that her relationship with defendant had ended and that she was no longer living in the house on the property. She alleged that, because the parties' relationship had ended, it was "impossible" for them to continue to jointly possess and enjoy the property.

-1-

Plaintiff requested that the circuit court enter an order partitioning the property. She explained that "because the subject property is a single building, partition in-kind is impractical, if not impossible." Accordingly, plaintiff proposed that the circuit court (1) order a sale of the property and divide the proceeds equitably between the parties, or alternatively (2) order defendant to buy out plaintiff's one-half interest for fair market value. Lastly, plaintiff sought a restraining order enjoining defendant from damaging the property and requested that the circuit court order defendant to pay her rent during the pendency of the proceedings.

Concurrently with her answer, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8). Defendant argued that plaintiff's complaint failed to state a claim upon which relief could be granted. Defendant first contended that because she and plaintiff owned the property "as joint tenants with full rights of survivorship," the joint tenancy was "indestructible" and could not be partitioned. Defendant further argued that even if the life-estate portion of plaintiff's one-half interest could legally be partitioned, as suggested by *Albro*, 434 Mich at 281-282, 287, this would not be a viable remedy because there was "no practical market" for plaintiff's joint life estate. Defendant questioned why anyone would purchase a joint life estate that would end upon the death of plaintiff or defendant, both in their sixties at the time this action was filed.

On July 23, 2013, plaintiff moved to amend her complaint. Plaintiff argued that "an adequate remedy at law does not exist in this matter" and requested that she "be permitted to amend her Complaint to add counts seeking equitable relief." Plaintiff attached a Proposed First Amended Complaint containing her original claim for partition, but also setting forth new claims of (1) quantum meruit, (2) breach of implied contract, (3) "forcible exclusion," (4) conversion, and (5) intentional infliction of emotional distress.[1]

That same day, July 23, 2013, plaintiff also filed a "motion for temporary relief and for asset injunction," in which she alleged that defendant had excluded her from the house on the property by changing the locks and refusing to provide her a key. Plaintiff argued that the circuit court should enjoin defendant from committing waste on the property and order defendant to pay her monthly rent.

Plaintiff responded to defendant's motion for summary disposition. In response, plaintiff argued that the parties' joint life estates could be partitioned under *Albro* without affecting the dual contingent remainders, which would remain intact.

In her reply, defendant argued that plaintiff had misapprehended the law. Defendant appeared to acknowledge that, under *Albro*, the parties' joint life estates could be partitioned independently of the dual contingent remainders. However, relying in part on *Wengel v Wengel*,

---

[1] Contrary to plaintiff's assertion in her motion to amend, not all of these proposed additional claims were equitable in nature. Although quantum meruit is an equitable claim, breach of implied contract, conversion, and intentional infliction of emotional distress are legal claims. Plaintiff's proposed claim of "forcible exclusion" is not a recognized cause of action in Michigan, but most closely resembles an equitable claim to quiet title.

270 Mich App 86, 105; 714 NW2d 371 (2006), defendant contended that a forced sale would be impossible in this case because there was simply no market for the joint life estates which could, in concept, last only 24 hours in the event that plaintiff or defendant died the following day.[2] Moreover, defendant argued that plaintiff's complaint had sought a full partition "of the property as a whole without reference to the life estate[s] or contingent remainders" and that plaintiff had therefore, in effect, requested a partition of *both* the joint life estates *and* the dual contingent remainders. Defendant argued that this was not permitted by law.

Defendant argued that plaintiff's motion to amend should be denied because (1) plaintiff's proposed additional claims would cause undue delay, and (2) the amendment would be futile because plaintiff was seeking to obtain property-division relief akin to that granted in a divorce even though the parties were never married. Defendant also argued that plaintiff's Proposed First Amended Complaint failed to state legally cognizable claims. In particular, defendant argued that plaintiff had chosen to end her relationship with defendant and had voluntarily moved out of the house, that plaintiff had left the property of her own free will, that plaintiff had keys to the home, that plaintiff was free to reenter the home at any time, and that defendant had not acted in an outrageous manner. Defendant raised substantially similar arguments in her response to plaintiff's "motion for temporary relief and for asset injunction."

The circuit court heard oral argument on August 14, 2013. The court noted that it would hear the parties' arguments concerning defendant's motion for summary disposition before considering plaintiff's outstanding motions. Defendant's attorney argued that partition was not an appropriate remedy because the life estates were virtually unmarketable and would cease to exist upon the death of either original joint tenant, at which time the surviving joint tenant would take the entirety of the property in fee simple to the exclusion of any purchaser of one of the life estates. Defense counsel argued that "that's not a practical resolution. There is no available remedy here." Defense counsel further argued that it would be impossible to partition the entire property as plaintiff had requested in her complaint because the dual contingent remainders could not be destroyed. Counsel reiterated that plaintiff's pleadings had not differentiated between the life estates and the dual contingent remainders, but had merely sought "a partition of the whole property."

Plaintiff's counsel, citing *Albro*, 434 Mich at 281-282, 287, pointed out that the life-estate components of the parties' interests could be partitioned without doing violence to the dual contingent remainders, which would continue in force until the death of one of the two original joint tenants. Counsel appeared to agree with the circuit court's concern that plaintiff might not be able to sell her life estate to anyone, but argued that other equitable remedies such as quantum

---

[2] In *Wengel*, 270 Mich App at 105, this Court held that although one joint tenant's life-estate interest could be lost to the other joint tenant through adverse possession, the dual contingent remainders could not be lost or destroyed and would remain intact. The *Wengel* Court noted that the continuing existence of the dual contingent remainders could "hinder [one joint tenant's] ability to convey or alienate [his or her life-estate portion of] the property" because the life estate would necessarily end upon the death of one of the original joint tenants. *Id*.

meruit would be available in such a situation. This, counsel argued, was why the circuit court should grant plaintiff's motion to amend the complaint.

With respect to plaintiff's motion to amend the complaint, counsel argued that equitable relief was "absolutely necessary in this case" because plaintiff "has lots of money tied up in that house. She needs to get her equity out of the house." Plaintiff's counsel took issue with defendant's assertion that plaintiff had not been excluded from the property. Counsel insisted that defendant had changed the locks and had kept plaintiff from entering the home. Plaintiff's attorney then made several petty accusations concerning defendant's rude behavior, cleanliness, and housekeeping skills. The circuit court remarked, "This is not family court. . . . Michigan does not recognize same sex marriages." The circuit court continued:

> I'm a little perplexed as to how—I mean, in essence I know what you're asking for, you're asking for [plaintiff's] contributions to be repaid to her.

> * * *

> [B]ut how are the claims that you're making, or you wish to make in your amended complaint, cognizable under the law as it applies, not to family issues . . . [but] to civil issues?

Defendant's attorney noted that plaintiff and defendant would remain joint tenants until one of them died, at which point the survivor would take the entirety of the property in fee simple absolute. He argued that "[n]othing will change that, nothing has changed it." Defense counsel suggested that all of plaintiff's proposed additional claims were simply attempts to obtain a "marital-like dissolution and division of the assets" and that the additional claims would have nothing to do with the core issue in this case—namely, whether the joint tenancy could be partitioned under Michigan law. Plaintiff's attorney responded:

> [T]o characterize this as trying to get marital relief in a non-marital union, it's just not true, that's not what we're trying to do. We're trying to solve an issue here between the parties. That's what a court of equity is to do and I think amending the complaint will get to equity in this case, so we're asking you to allow us to amend the complaint, your Honor.

Plaintiff's attorney again argued that her client had been locked out of the house and that defendant therefore owed plaintiff rent accruing since the date of her alleged wrongful ejectment. The circuit court informed plaintiff's attorney that, with the exception of quantum meruit, "the claims that you wish to make in your amended complaint are not equitable claims."

The circuit court then ruled from the bench:

> Here, the property was conveyed by warranty deed containing express survivorship language, thus making the parties joint tenants with full rights of survivorship. Because the granting instrument conveyed indestructible dual contingent remainders and because plaintiff seeks partition of the whole property, the claims fails as a matter of law. Although partial partition is allowed through

the conveyance of a life estate, such partition does not affect the contingent remainders. . . . *Wengel*, 270 Mich App [at] 102[.]

Plaintiff has not requested partial partition in this case, but even if she had, partition of a life estate is not a viable remedy because such an interest is not truly marketable. For these reasons the Court will grant summary disposition in favor of defendant pursuant to MCR 2.116(C)(8).

The Court is denying plaintiff's request to amend the complaint because amendment would be futile in this instance. Plaintiff seeks to add new claims which fail as a matter of law because she has not been deprived of her interest in the property, and further, the Court of Appeals has held that in cases of non-married couples recovery, based on contracts implied in law or quantum meruit is not permitted, because to do so would essentially resurrect common-law marriage. . . .

Again, plaintiff has presented no evidence that her interest in the subject property has been interfered with or otherwise harmed, and therefore, the request for injunctive relief is also denied.

On August 14, 2013, the circuit court entered an order granting defendant's motion for summary disposition under MCR 2.116(C)(8) "for the reasons stated on the record." The circuit court denied plaintiff's motions to amend the complaint and for injunctive relief in the same order.

II

We review de novo the circuit court's decision to grant a motion for summary disposition pursuant to MCR 2.116(C)(8). *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition brought under subrule (C)(8) "tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Spiek*, 456 Mich at 337. "The motion must be granted if no factual development could justify the plaintiff['s] claim for relief." *Id*.

An action to partition land is equitable in nature. MCL 600.3301; *In re Temple Marital Trust*, 278 Mich App 122, 141; 748 NW2d 265 (2008). Such actions are reviewed de novo. *Id*. at 141-142. We review for an abuse of discretion the circuit court's denial of a motion to amend the complaint. *Franchino v Franchino*, 263 Mich App 172, 189; 687 NW2d 620 (2004).

III

In Michigan, there are two types of joint tenancies: (1) standard or ordinary joint tenancies, and (2) joint tenancies with full rights of survivorship. *Wengel*, 270 Mich App at 94. Parties who own property as joint tenants with full rights of survivorship hold joint life estates with dual contingent remainders. *Albro*, 434 Mich at 275. The dual contingent remainders cannot be destroyed by the act of either cotenant. *Id*. at 279. Although the life estates may be partitioned, this does not affect the dual contingent remainders, which remain intact. *Id*. at 282. The dual contingent remainders are not subject to partition. *Id*. at 284.

"All persons holding lands as joint tenants or as tenants in common may have those lands partitioned." MCL 600.3304. Partition is generally implemented by physically dividing the property so that each cotenant may obtain possession of a separate, sole estate in specific real estate. 2 Cameron, Michigan Real Property Law, § 30.19, p 1792. "Physical division of the jointly held property is the preferred method of partition." *Albro*, 434 Mich at 284. Only if an equitable in-kind division of the property cannot be achieved should the court order the property sold and divide the proceeds. *Id.*; see also MCR 3.401(B).

As an initial matter, we note that plaintiff is incorrect to argue that the term "partial partition" does not exist in Michigan law. In *Wengel*, 270 Mich App at 102, this Court stated that "[a]lthough a joint tenant with rights of survivorship can achieve *partial partition* through conveyance of the life estate, the partition does not affect the contingent remainders." (Emphasis added). In other words, the term "partial partition" has been used by this Court to describe the partitioning of the joint life estates (but not the dual contingent remainders, which cannot be partitioned) that are held by joint tenants with full rights of survivorship.

Under *Albro*, 434 Mich at 287, plaintiff was theoretically entitled to a partition of the *life-estate portions* of the parties' joint ownership interests. But as even plaintiff admitted in her pleadings below, the property at issue in this case (a lake house) was simply not amenable to a physical, in-kind division. Unlike in *Albro*, where the commercial property in question could be divided into separate, marketable parcels, the property in the instant case consists of a single house and cannot be physically divided without causing inconvenience and prejudice to the parties. See *Butler v Roys*, 25 Mich 53, 62 (1872).

If the property cannot be physically divided without causing undue prejudice, the court may order the premises sold in lieu of partition. MCL 600.3332; MCR 3.401(B). However, because the dual contingent remainders at issue in this case are indestructible and not subject to partition, the most that either cotenant could ever be compelled to convey is her one-half interest in the joint life estate. *Albro*, 434 Mich at 286-287 (noting that "a party may alienate his undivided interest in a joint life estate" but that this does not affect the dual contingent remainders). See also 1 Cameron, Michigan Real Property Law, § 9.11, p 323. Accordingly, we conclude that a sale of the premises in lieu of partition is not a reasonably available option in this case.

As in *Wengel*, 270 Mich App at 106, the remedy for plaintiff in this case is "to refrain from engaging in a costly legal battle or other confrontation with [the] occupying life tenant, deciding instead to take peaceful possession by invoking . . . her rights predicated on the contingent remainder upon the death of the life tenant." This remedy, of course, requires that plaintiff survive defendant and may therefore seem wholly unsatisfactory. Nonetheless, on the facts of this case, it is the only real remedy available.

The property could not be reasonably physically partitioned or sold in lieu of partition. Plaintiff's complaint failed to state a claim upon which relief could be granted. The circuit court properly granted summary disposition in favor of defendant.

IV

We must also consider whether the circuit court properly denied plaintiff's motion to amend the complaint to set forth her proposed additional claims. When summary disposition is granted pursuant to MCR 2.116(C)(8), (9), or (10), the circuit court must give the parties an opportunity to amend their pleadings in accordance with MCR 2.118 unless the amendment would not be justified. MCR 2.116(I)(5). In her motion to amend, plaintiff sought to add new claims of (1) quantum meruit, (2) breach of implied contract, (3) "forcible exclusion," (4) conversion, and (5) intentional infliction of emotional distress. The circuit court concluded that each of these proposed additional claims was either futile or unenforceable as a matter of law. We agree in part and disagree in part.

Plaintiff's proposed claims of conversion and intentional infliction of emotional distress were without merit. In plaintiff's Proposed First Amended Complaint, she alleged that defendant had converted the property. Real property cannot be the subject of a claim of common-law conversion. *Eadus v Hunter*, 268 Mich 233, 237; 256 NW 323 (1934); *Embrey v Weissman*, 74 Mich App 138, 143; 253 NW2d 687 (1977). Nor did plaintiff plead sufficiently outrageous conduct by defendant to support her claim of intentional infliction of emotional distress. *Tope v Howe*, 179 Mich App 91, 107; 445 NW2d 452 (1989); see also *Doe v Mills*, 212 Mich App 73, 92; 536 NW2d 824 (1995) (noting that "it is initially for the court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery"). The court properly denied plaintiff's motion to amend with respect to these two proposed claims.

There was a bona fide factual dispute with regard to whether defendant changed the locks and locked plaintiff out of the house. Plaintiff claimed at all times throughout the litigation of this case that defendant had kept her off the premises by changing the locks. Defendant denied this and asserted that plaintiff had a key. Either way, however, it is beyond dispute that plaintiff and defendant, as the possessors of joint life estates, had equal rights to access and enjoy the property. While plaintiff's proposed "forcible exclusion" claim is not a recognized cause of action in Michigan, it most closely resembles a quiet-title claim. See MCL 600.2932(1). "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). We conclude that plaintiff's "forcible exclusion" claim was actually a claim to quiet title. *Id.* at 711-712. Given the genuine factual dispute concerning defendant's conduct and plaintiff's ability to access the property, the circuit court erred by concluding that it would be futile to allow plaintiff to add this quiet-title claim.

Similarly, the court erred by determining that plaintiff's proposed claims of quantum meruit and breach of implied contract were unenforceable as a matter of law because they somehow arose from the now-repudiated doctrine of common-law marriage. Contrary to the conclusion of the circuit court, plaintiff's proposed claims of quantum meruit and breach of implied contract were not based on the doctrine of common-law marriage or the parties' meretricious relationship. Plaintiff was not claiming that defendant owed her something of value under a contract *implied in law* arising from the sexual relationship. Rather, plaintiff was claiming that she had the right to equal access and enjoyment of the property under the terms of

the warranty deed and that she was legally entitled to compensation for the loss of that right under a contract *implied in fact*. These are claims that any cotenant could have made under like circumstances; they had nothing to do with the parties' same-sex relationship. See *Featherston v Steinhoff*, 226 Mich App 584, 588-591; 575 NW2d 6 (1997). Unlike the plaintiff in *Featherston*, who gratuitously performed services for the defendant during the course of a meretricious relationship, plaintiff in the instant case actually paid for one-half of the property and her proposed claims were based on sufficient independent consideration. *Id*. at 588.

V

The property could not be reasonably partitioned or sold in lieu of partition. We affirm the circuit court's grant of summary disposition in favor of defendant with respect to plaintiff's partition claim.

We affirm in part and reverse in part the circuit court's denial of plaintiff's motion to amend the complaint. Plaintiff's proposed claims of conversion and intentional infliction of emotional distress were without merit. However, we remand to the circuit court with instructions to allow plaintiff to amend her complaint and pursue her claims of quiet title, quantum meruit, and breach of contract implied in fact.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Kathleen Jansen
/s/ Michael J. Talbot
/s/ Deborah A. Servitto

-8-