*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEFF BECKETT,

      Plaintiff-Appellant,

v

JULIE MCCREDIE,

      Defendant-Appellee.

UNPUBLISHED
August 08, 2025
11:35 AM

No. 370401
Oakland Circuit Court
LC No. 2023-202932-CK

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(8) and (10). We affirm in part and reverse in part the order of the trial court, and we remand to that court for further proceedings consistent with this opinion.

## I. INTRODUCTION

The underlying dispute in this appeal arises from alleged loans that plaintiff made to defendant during their brief relationship in 2022. Plaintiff asserted below and now on appeal that he loaned defendant over $150,000 to assist her financially during her contentious divorce proceedings, that defendant agreed to repay the money after her divorce was final, and that defendant failed to repay the money owed. By contrast, defendant asserts that she and plaintiff were in an intimate relationship and, during this relationship, plaintiff gave her money that the parties understood to be gifts. Defendant denies that an agreement existed whereby she agreed to repay the money plaintiff gave her. Plaintiff sought judicial intervention to enforce the terms of the alleged loan agreements, the trial court granted summary disposition in defendant's favor, and this appeal followed.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff and defendant became acquainted through their respective memberships at the Warwick Hills Golf and Country Club in Grand Blanc Township. In the spring of 2022, the parties discovered that they both were going through difficult divorces. Sometime during the early summer, they became more than just acquaintances. However, the nature of their relationship is unclear. Plaintiff testified that in 2022, over the Fourth of July holiday, he and defendant spent the weekend together at defendant's family

-1-

cottage. After this weekend, he was no longer interested in having an intimate relationship with defendant; he simply wanted to be her friend. By contrast, defendant asserted that for approximately six months, she and plaintiff dated and had an intimate relationship. According to defendant, they had sexual intercourse on several occasions, plaintiff gave her his mother's ring, and they talked about getting married and buying a house together.

Although plaintiff and defendant recounted different versions of their relationship, it is undisputed that between June 30, 2022, and August 4, 2022, plaintiff gave defendant three separate checks totaling $140,000. It also is undisputed that sometime after plaintiff gave defendant these checks, he presented defendant with three "Loan Agreements," one for each check given to plaintiff. The loan agreements are all dated August 15, 2022, and signed only by plaintiff. All three loan agreements provide that the "Borrower promises to repay this principal amount to the Lender, with interest payable on the unpaid principal at the rate of 2.00 percent per annum," and that the "loan will be repaid in full 7 days after the finalization of divorce." The parties agree that defendant refused to sign these documents.

On November 1, 2022, plaintiff wrote a check for $10,000 made payable to "Paul Scott & Associates." Paul Scott was an attorney plaintiff found for defendant who was willing to represent defendant in her pending divorce action. The memo line on the check indicates that the check was for "Julie Retainer." Corresponding with this purported retainer fee, defendant, also on November 1, 2022, signed a retainer agreement with Paul Scott & Associates for legal representation in her divorce.

Finally, it is undisputed that plaintiff paid for some of defendant's medical expenses. On October 28, 2022, plaintiff's credit card was used to pay $600 in medical fees at the Drake Center, and on November 2, 2022, this same credit card was used to pay $3,780.50 to Dr. Gregory C. Roche, a plastic surgeon.

In December 2022, the relationship between plaintiff and defendant ended. Defendant testified that on December 18, 2022, plaintiff told her that he was in love with someone else. Approximately nine months after the relationship ended, plaintiff filed a complaint in the Oakland Circuit Court alleging that defendant refused to repay plaintiff loans totaling $154,380.50. In Count I, plaintiff alleged a simple breach-of-contract claim. In Count II, titled "quantum meruit," plaintiff alleged a claim for unjust enrichment. In Count III, plaintiff alleged a claim for fraudulent inducement. With Count III, plaintiff alleged that as an inducement for plaintiff to lend defendant money periodically, defendant showed plaintiff documents purporting to demonstrate that she had a $5 million interest in a family trust. Plaintiff alleged that defendant allowed plaintiff to examine the trust documents to assure plaintiff that she was able to repay him. Plaintiff further alleged that defendant made material representations to plaintiff that she needed the money, that she had a $5 million interest in a trust, and that she would repay plaintiff. Plaintiff alleged that he relied upon defendant's representations to his detriment and, as a result, he suffered damages in the amount of $154,380.50. In her answer to the complaint, defendant generally denied plaintiff's allegations. Defendant affirmatively stated that all money she received from plaintiff was gratuitous in nature, essentially gifts.

In January 2024, defendant moved for summary disposition under MCR 2.116(C)(8) and (10). At a March 2024 hearing, the trial court granted defendant's motion and dismissed plaintiff's complaint in its entirety. The trial court found that the parties enjoyed a meretricious relationship, and plaintiff failed to present any evidence from which he could rebut the presumption that the money he gave to defendant was with a gratuitous intent.

-2-

## III. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Sherman v St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). A motion for summary disposition pursuant to MCR 2.116(C)(8) tests a complaint's legal sufficiency. *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 623; 971 NW2d 716 (2021). "A motion for summary disposition under MCR 2.116(C)(8) is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery." *Id*. A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for the plaintiff's claims. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506; 991 NW2d 230 (2022). Summary disposition is appropriate under MCR 2.116(C)(10) when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). In reviewing such a motion, a court considers the pleadings, affidavits, depositions, admissions, and documentary evidence in the light most favorable to the nonmoving party. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ. *Id*.

Further, "[w]hether a specific party has been unjustly enriched is generally a question of fact," but "whether a claim for unjust enrichment can be maintained is a question of law," which this Court reviews de novo. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). This Court "review[s] de novo a trial court's dispositional ruling on an equitable matter." *Id*.

## IV. DISCUSSION OF THE ISSUES

### A. BREACH OF CONTRACT

Defendant moved for summary disposition of plaintiff's three-count complaint under MCR 2.116(C)(8) and (10). The trial court did not engage in a detailed analysis of each count or defendant's challenges thereto, but simply found that the parties were involved in a meretricious relationship, and that plaintiff failed to present any evidence to rebut the presumption of gratuitous intent. Essentially, the trial court found as a matter of law that the monies given were gifts, not loans, because the parties were in a "meretricious relationship" at the time. However, after reviewing the record, we conclude that a question of fact existed in this regard.

In *Featherston v Steinhoff*, 226 Mich App 584, 589; 575 NW2d 6 (1997), this Court held that "services rendered during a meretricious relationship are presumably gratuitous." The phrase "meretricious relationship" is defined in *Black's Law Dictionary* (12th ed) as "[a] stable, marriage-like relationship in which the parties cohabit knowing that a lawful marriage between them does not exist." When using the phrase "meretricious relationship," this Court has accorded the phrase essentially the same meaning as set forth in *Black's Law Dictionary*. See, e.g., *Featherston*, 226 Mich App at 585-586; *Carnes v Sheldon*, 109 Mich App 204, 207-208; 311 NW2d 747 (1981); *Roznowski v Bozyk*, 73 Mich App 405, 406-407; 251 NW2d 606 (1977). In each of those cases, this Court discussed the presumption of gratuity in the context of cohabitation.

In this case, defendant testified that she and plaintiff had their first date in either May or June 2022 and that they dated for six months thereafter. Defendant testified that plaintiff gave her a ring that

belonged to his mother and they were looking at houses together. According to defendant, plaintiff did not propose. He simply said, "[W]e're getting married." Then he indicated that they could live at the house they referred to as "Burning Tree," the house under construction that was part of defendant's marital estate that plaintiff wanted to buy. Alternatively, plaintiff suggested that defendant and her children could move into his house. Defendant testified that plaintiff professed his love for her and told her that they were going to have a life together. Defendant claimed that she and plaintiff had sex several times. They also slept over at each other's houses.

Plaintiff's testimony regarding the relationship was starkly different from defendant's description. Plaintiff testified that he was separated from his wife when he met defendant. He and defendant then started dating during his divorce. According to plaintiff, he had sex with defendant on one occasion over the Fourth of July holiday in 2022. Plaintiff further testified that after they returned from that holiday trip, he was not interested in dating defendant or having sex with her. Instead, he was of the "mindset" that he was just "taking care" of defendant. After defendant disclosed very intimate things about her trauma-filled life, plaintiff "felt like she needed some help. She could use a friend. She could use someone to support her." Plaintiff admitted, however, that in October 2022, he sent a text message to defendant where he stated, "I'm not going anywhere . . . I know who you are and I know how to love you." Further, plaintiff acknowledged that after the Fourth of July weekend, plaintiff and defendant slept over at each other's houses and they shared the same bed. However, plaintiff denied that he had sex with defendant during these sleep-overs. Plaintiff testified that he never talked to defendant about buying a house, moving in together, or being "a family." Plaintiff denied that he ever gave defendant a gold ring that belonged to his mother. Plaintiff asserted during his deposition that his deceased mother did not even have a gold ring. Plaintiff never told defendant that he would marry her.

Although the parties gave conflicting descriptions, neither plaintiff nor defendant testified that they were cohabitating. Defendant testified that marriage was contemplated, but there was no evidence that plaintiff and defendant were living as a traditional married couple. On this record, the trial court erred when it concluded, as a matter of law, that the parties were in a meretricious relationship. At best, a question of fact existed with respect to whether the parties enjoyed a meretricious relationship.

In any event, the fact that there may have been a meretricious relationship does not foreclose the ability to enter into an enforceable and ordinary contract. See *Featherston*, 226 Mich App at 588. In *Featherston*, this Court held that courts will enforce a contract made during a meretricious relationship when the contract is express or implied in fact. *Id*. A valid contract requires an offer, acceptance, and mutual agreement, otherwise known as a meeting of the minds, to all the contract's essential terms. *Houghton Lake Area Tourism & Convention Bureau v Wood,* 255 Mich App 127, 149; 662 NW2d 758 (2008). We find that a question of fact existed with regard to whether the money given by plaintiff to defendant was a contractual loan, at least concerning the three checks and the $10,000 retainer for defendant's divorce attorney.

Plaintiff had a specific recollection of giving defendant the three checks. He admitted that when he gave her the checks, he did not also simultaneously give her the loan agreements. During his deposition, plaintiff explained that it was his understanding that defendant would pay him back after her divorce was final. Plaintiff testified that defendant showed him several documents, including tax returns, real estate holdings, all the financials at issue in her divorce, and the trust agreement, to demonstrate that she would have the ability to repay the loans after her divorce concluded. Plaintiff believed that defendant

would repay him using her divorce settlement or funds from her family trust.  Plaintiff further testified that he relied on these documents when he decided to lend defendant the money.

According to plaintiff, defendant made several oral statements acknowledging their agreement.  Defendant said to him: "[D]on't worry.  I'll pay you back."  Every time plaintiff gave defendant money, defendant said: "[N]o problem.  No problem.  I'll pay you back.  You can trust me."

Plaintiff acknowledged that he gave defendant three checks, two for $25,000 and one for $90,000, without having her sign a note.  Indeed, defendant refused to sign the after-the-fact proposed loan agreements he gave to her on August 15, 2022.  He then gave defendant's new divorce attorney, Scott, a $10,000 check on November 1, 2022.  With this fourth check, made payable to Scott, plaintiff similarly did not ask defendant to sign a note.  When asked about these events, plaintiff first testified that he did not know why he never asked defendant to sign a loan agreement for the retainer he paid to Scott on defendant's behalf.  He then testified that when he gave defendant that last check in November 2022, he had no idea that she would not repay him.  He still was operating under the understanding that plaintiff was going to repay him.  Plaintiff testified that he drafted the proposed loan agreements after the fact because "it started to be a pretty big number and [he] wanted to get something on paper."

By contrast, defendant testified that the monies plaintiff gave her were gifts, not loans.  According to defendant, when plaintiff gave defendant the checks, he never presented them to her as loans.  They never discussed this distinction and plaintiff never gave her a note to sign at the time.  Moreover, defendant testified that she never told plaintiff that she would repay the monies.  From the start, defendant informed plaintiff that she did not have the means to pay him back.  In response, according to defendant, plaintiff simply gave her the money and told her to "just take it."

Although defendant could not recall the details, she remembered that months later, plaintiff sent an e-mail or text saying "that he was going to send over promissory notes; that he was not comfortable not having them signed."  Defendant asserted that she never acknowledged that she was going to sign the notes.

During her deposition, defendant described the circumstances under which one of the checks was given.  According to defendant, in May 2022, plaintiff gave her a check for $25,000. Plaintiff asked defendant, who was crying at the time, if she wanted money, and then he wrote her the check.  Defendant never recalled telling plaintiff that she would repay all the money he gave her after her divorce was final.

Regarding the $10,000 check plaintiff wrote to Scott, her divorce attorney, defendant admitted that plaintiff helped her to retain Scott to represent her in the divorce.  Plaintiff offered to pay and then paid Scott's $10,000 retainer fee.  Defendant never told plaintiff that she would have to repay the $10,000.  Indeed, she claimed, they never discussed paying back anything.  When asked why it was not assumed that she would pay plaintiff back, defendant explained: "[W]hy would I?  He was my boyfriend.  We were going to get married.  We were looking at homes."

In further support of his allegation that the monetary transactions constituted loans from plaintiff to defendant, plaintiff cites a text message he received from defendant.  Plaintiff asserts that this text message indicated defendant's acknowledgment that the sums of money he had given her were not gifts, but loans.  The text message from defendant stated:

Sorry to bother you again. I want to make sure I get this taken care of as soon as it is possible. I want to get the notes I have with you signed for you. Would you be able to e-mail them to me so I can sign them today? Also, do you have the bill for the printing services. I need to get that invoice paid as well.

When asked about the text message in her deposition, defendant could not recall sending a text message purporting to acknowledge that she needed to sign promissory notes. Defendant asserted that she never agreed that she was going to sign the notes. When shown the text message, defendant testified that she was not denying that she sent the text, she simply did not recall. She also did not know if the reference to "the notes" was to the promissory notes or "notes" that were going to be provided to the accountant that plaintiff had engaged to review defendant's financial records for purposes of her divorce. During her deposition, defendant asserted that she did not tell plaintiff she would sign his promissory notes and "that's why [she] never signed them."

Based on this record, the trial court erred when it granted defendant's motion for summary disposition of the breach-of-contract claim concerning the three checks and the $10,000 retainer. There is a genuine issue of material fact regarding the circumstances under which defendant received the money from plaintiff and whether the parties understood that defendant was expected to repay the money as a loan. Plaintiff testified that defendant agreed to repay the money. While defendant denied that she agreed to repay plaintiff, her own text message is particularly telling regarding the parties' mutual understanding of the agreement. Ultimately, the parties' conflicting testimony appears to be a credibility contest, and summary disposition is improper when the case requires a credibility determination. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 476-477; 957 NW2d 377 (2020). Thus, because questions of fact existed regarding the relationship between the parties and whether a loan agreement had been entered into between plaintiff and defendant, we conclude that the trial court erred when it summarily dismissed plaintiff's breach-of-contract claim under MCR 2.116(C)(10).[1]

---

[1] However, we find little to no evidence on the record to support a finding that plaintiff advanced money as a loan to pay for medical treatment and defendant agreed to repay plaintiff. On October 28, 2022, plaintiff's credit card was used to pay $600 in fees at the Drake Center and on November 2, 2022, plaintiff's credit card was used to pay $3,780.50 to Dr. Roche. Plaintiff testified that defendant said she would repay him for the medical expenses that were paid with his credit card. However, with respect to the $600 charge, plaintiff stated during his deposition that he was not asking to be repaid for this charge. Further, regarding Dr. Roche's fees, defendant testified that plaintiff expressed displeasure with the size of her breasts, that he insisted she go to Dr. Roche for breast augmentation, and that he paid for the medical services. Plaintiff did not specifically claim that he did not gratuitously pay this expense. Instead, he simply testified that he believed he was paying Dr. Roche to treat defendant for pain management. Later, when asked to explain what money was given as a gift, plaintiff testified:

The only thing I did for a loan—I was very specific on what were loans. There's a 25-, a 25-, a 90-, and a 10-. All the rest of the stuff I did, I did that out of the, you know—like, the loans are out of the goodness of my heart, to just give her the loans in the first place, but the other stuff I just paid for. I was just taking care of that family.

Defendant also suggests that summary disposition was appropriate because some of the elements of the contract were missing and not properly pleaded in the complaint. We disagree. In a breach-of-contract claim, the plaintiff must show "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Total Quality, Inc v Fewless,* 332 Mich App 681, 694; 958 NW2d 294 (2020) (quotation marks and citations omitted). Plaintiff's complaint specifically alleges that defendant borrowed money from him, that she agreed to repay the amounts borrowed, that she failed to repay the loans, and that plaintiff suffered damages in the amount of $154,380.50. Plaintiff's claim for breach of contract was pleaded with sufficient specificity to withstand a challenge under MCR 2.116(C)(8).

Moreover, viewing the evidence in the light most favorable to plaintiff, there was sufficient evidence from which a trier of fact could conclude that all the essential terms of the agreement were present—specifically, that defendant promised to repay plaintiff after her divorce was finalized. Further, even if some terms of the alleged agreement were not included in the complaint, this is not fatal to plaintiff's claim. "A loan made with no fixed time of repayment is payable on demand." *Jackson v Estate of Green,* 484 Mich 209, 217; 771 NW2d 675 (2009). Further, this Court has long held that a contract may be enforced despite some terms being incomplete or indefinite so long as the parties intended to be bound by the agreement. See *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). Accordingly, we conclude that the trial court erred by dismissing plaintiff's breach-of-contract claim to the extent that it concerned the three checks written to defendant, as well as the $10,000 retainer.[2]

## B. UNJUST ENRICHMENT

The trial court did not specifically address plaintiff's unjust-enrichment claim. Because we conclude that a question of fact existed with respect to whether the monies given were gifts or loans, we conclude that the trial court erred in summarily dismissing plaintiff's unjust-enrichment claim at this time.[3]

Unjust enrichment is an equitable doctrine wherein courts enforce a fictional contract implied in law to ensure justice is obtained. *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 185-186; 504 NW2d 635 (1993). "[T]o sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps*, 273 Mich App at 195. Well-established authority provides that "a contract will be implied only if there is no express contract covering the same subject matter." *Landstar Express Am, Inc v Nexteer Auto Corp*, 319 Mich App 192, 201-202; 900 NW2d 650 (2017) (quotation marks and citation omitted). However, a breach-of-

---

Thus, plaintiff has failed to demonstrate that a question of fact existed with respect to whether defendant breached an agreement to repay him for amounts he expended for her medical treatment. Therefore, we affirm the trial court to this extent.

[2] We decline to address defendant's argument on appeal that plaintiff's claims are barred by the statute of frauds, as the trial court did not address that issue in its decision. On remand, defendant is free to renew that argument if so inclined.

[3] Again, our conclusion is limited to the three checks written to defendant, as well as the $10,000 retainer.

contract claim and an unjust-enrichment claim can be alleged in the alternative when there is some question whether an express contract actually existed. See *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327-328; 657 NW2d 759 (2002).

The trial court presumably found that plaintiff was not entitled to recover under an unjust-enrichment theory in light of its finding that the money was intended as a gift. However, we conclude that there is a question of fact regarding whether the money plaintiff gave defendant in 2022 was intended as a gift or was given pursuant to an oral contract. Under these circumstances, it is axiomatic that a question of fact exists with respect to whether defendant's retention of the money was unjust. Accordingly, the trial court erred when it granted summary disposition with respect to plaintiff's claim of unjust enrichment.

C. FRAUDULENT INDUCEMENT

Finally, plaintiff argues that the trial court erred when it summarily dismissed his fraudulent-inducement claim. However, there is no error in this regard. Summary disposition was appropriate under both MCR 2.116(C)(8) and (10).

To establish a claim for fraud in the inducement, a plaintiff must show that

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that is was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 477; 666 NW2d 271 (2003), quoting *M & D, Inc v McConkey*, 226 Mich App 801, 806; 573 NW2d 281 (1997).]

Plaintiff alleged in his complaint that defendant showed plaintiff documents related to her family trust indicating that she had a $5 million interest in the trust to induce plaintiff into loaning her the money and to reassure plaintiff that defendant would be able to repay the loan. Plaintiff further alleged that he relied upon defendant's representations to his detriment. Plaintiff additionally alleged that defendant's promise to repay the loan was false. However, plaintiff has not alleged defendant made any material misrepresentation except for her alleged promise to repay him. "A mere broken promise does not constitute fraud, nor is it evidence of fraud." *Marrero v McDonnel Douglas Capital Corp*, 200 Mich App 438, 444; 505 NW2d 275 (1993). Accordingly, the trial court properly dismissed plaintiff's claim for fraudulent inducement under MCR 2.116(C)(8).

Further, because plaintiff failed to present any evidence that representations made by defendant were untrue, the claim for fraudulent inducement also was properly dismissed under MCR 2.116(C)(10). Plaintiff testified that defendant showed him several documents, including tax returns, real estate holdings, all the financials at issue in the divorce, and the trust agreement, to induce him to lend her the money she needed to get through her divorce. Plaintiff further testified that he relied on these documents when he decided to lend defendant the money. However, there is no evidence that any of these documents were false, misleading, or fraudulently created. That is, none of these documents misrepresented defendant's ability to repay the loan. Because plaintiff failed to present any evidence that defendant made false

misrepresentations to induce him into loaning her the money, the claim for fraudulent inducement was properly dismissed under MCR 2.116(C)(10).

## V. CONCLUSION

We reverse the trial court's dismissal of plaintiff's breach-of-contract and unjust-enrichment claims to the extent that they concerned the three checks written to defendant, as well as the $10,000 retainer. However, we affirm the trial court's dismissal of plaintiff's fraudulent-concealment claim, as well as his two remaining claims to the extent that they sought money allegedly advanced for payment of medical bills.

We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle