*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SATHYA GOWDA,

      Plaintiff-Appellee,

UNPUBLISHED
May 14, 2020

v

MUNE GOWDA,

      Defendant-Appellant.

No. 346790
Oakland Circuit Court
LC No. 2016-841241-DO

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant, Mune Godwa, appeals as of right the trial court's order awarding $50,311.50 in attorney fees to plaintiff, Sathya Gowda, related to the enforcement of a judgment of divorce. Defendant argues that the trial court erred by awarding $50,311.50 in attorney fees to plaintiff because his conduct was reasonable and he complied with the judgment of divorce and the divorce settlement agreement. We affirm in part and remand in part.

Plaintiff is entitled to trial court and appellate attorney fees for enforcing the Rasasri option transfer and Merrill Lynch retirement account provisions of the settlement agreement. On remand, however, the trial court must determine whether defendant violated the settlement agreement as to the Devanhalli property. Plaintiff is entitled to attorney fees for that issue if and only if defendant violated the settlement agreement on that issue. This appeal will be decided without oral argument pursuant to MCR 7.214(E)(1).

## I. UNDERLYING FACTS

This case arose out of an April 11, 2017 judgment of divorce which ended the marriage between plaintiff and defendant. A settlement agreement of that date was incorporated by reference into the judgment of divorce. The sole issue in this appeal is whether plaintiff is entitled to attorneys' fees for breach of the settlement agreement. In relevant part, the settlement agreement stated:

-1-

6.    Devanhalli Property, commonly known as Sy.No.7, measuring 5 acres, situated at Manchenalhalli Village, Yelahanka Hobli, Bengaluru North Taluk (hereinafter referred to as the "Devanhalli Property".):

   a. [Plaintiff] shall become and be the sole and separate owner of 100% of the Devanhalli Property, subject to any litigation or encumbrances, but free and clear of all claims by [defendant], his brother K.V. Krishnegowda, and all K.V. Krishnegowda' s children.

   b. [Defendant] shall forthwith cause his brother K. V. Krishnegowda to convey full title of the Devanhalli property to [plaintiff].  To effectuate the transfer of this property to [plaintiff], [defendant] shall cause his brother-KV.  Krishnegowda to execute a transfer and/or sale deed, referred to as a Release Deed; it is intended the Release Deed will convey full title of the Devanhalli Property to [plaintiff].  [Plaintiff]'s counsel in India prepared the Release Deed to effectuate this transaction.  If this Release Deed is not sufficient to transfer in full this property to [plaintiff], at any time as requested, [defendant] shall cause his brother, and [defendant] shall sign, as necessary, any document requested by [plaintiff] that will effectuate a full transfer of this property to [plaintiff].

   c. [Plaintiff] shall be responsible for all transfer taxes and related costs.

   d. [Plaintiff] shall fully indemnify, defend, and hold [defendant] harmless relative to any liabilities arising from ownership of the Devanhalli property.

* * *

9.    Rasasri Development Investment Property:

   a. [Plaintiff] shall become and be the sole and separate owner of 100% of the Rasasri Development Investment Property, which is an option on 1 acre of land and is evidenced by the Receipt and documents attached hereto as Exhibit A, subject to any litigation or encumbrances, and free and clear of all claims by [defendant].

   b. [Defendant] shall forthwith cause the title holder to convey full title of [defendant]'s interest in the Rasasri Development Investment property to [plaintiff].  [Plaintiff]'s counsel shall prepare the necessary documents to effectuate this transaction.

   c. [Defendant] shall sign or cause another to sign any document presented to him by [plaintiff]'s attorney that is necessary to effectuate the transfer of this property and his property investment interest to [plaintiff].

   d. [Plaintiff] shall be responsible for all transfer taxes and related costs.

* * *

15. Retirement Accounts:

* * *

b. [Defendant] shall forthwith rollover to [plaintiff] from his Merrill Lynch Basic IRA #680-8600, 50% of the value of the accounts [defendant] is receiving pursuant to Section 15.a. based on the February 28, 2017, statement for each listed account, subject to all growth and losses thereon between February 28, 2017, and the actual date of distribution to [plaintiff]. If the value of the Merrill Lynch Basic IRA account 6005 is not sufficient to satisfy the 50% equalization of the retirement accounts in 15.a. then the Merrill Lynch IRA #680-69R00 shall be used to satisfy the remaining equalization. If the Merrill Lynch IRA account 69R00 is used, the amount transferred to [plaintiff] shall include all growth and losses thereon between February 28, 2017 and the actual date of distribution to [plaintiff]. To the extent required to insure the tax-free nature of this rollover transaction, a qualified domestic relations order shall be utilized. Each party shall pay 50% of the cost of the QDRO preparation fee.

* * *

33A. In the event a party refuses or fails to perform any requirement to effectuate this Agreement, and a party has to seek relief from the Court and prevails on the relief sought, the other party may be ordered to pay the attorney fees and costs reasonably incurred in the enforcement of this Agreement.

Defendant's brother, KVK Gowda (KVK), purchased the Devanhalli property and the Rasasri option in India on defendant's behalf on an unknown date, at some point before April 11, 2017. Accordingly, KVK's signature was required on the documents to transfer the Devanhalli property and the Rasasri option to plaintiff.

The factual history of this case is long and complicated. But, in relevant part, defendant repeatedly refused to sign documents drafted by plaintiff's attorneys for the Devanhalli property transfer and the Rasasri option transfer. Instead, defendant had his own attorneys draft transfer documents and the parties became involved in litigation regarding which party, plaintiff or defendant, drafted documents that would actually effectuate the Devanhalli property transfer and the Rasasri option transfer. Furthermore, plaintiff took two unnecessary trips to India to close on the Devanhalli property and the Rasasri option: first, a May 2017 trip to India to close on the Devanhalli property, and second a January 2018 trip to India to close on the Rasasri option. In each instance, defendant's attorneys told plaintiff that closing would take place; absent that, plaintiff would not have traveled to India. However, closing did not take place during either of the two trips in question. Instead, plaintiff flew to India in each instance based on false representations by defendant.

Defendant only transferred the Devanhalli property to plaintiff after the trial court ordered him to do so. As of the date of the order appealed from in this case, defendant still had not transferred the Rasasri option to plaintiff. Similarly, the transfer of Merrill Lynch accounts from

defendant to plaintiff also was delayed. Defendant claimed that the delay was caused by Merrill Lynch, but plaintiff argued that defendant himself caused the delay. Eventually, during the course of plaintiff's attempt to enforce the settlement agreement she moved for attorney fees related to her attempts to enforce the divorce settlement agreement.

Plaintiff argued that defendant intentionally delayed her attempts to enforce the settlement agreement by having his own lawyers draft documents for the Devanhalli property transfer and the Rasasri option transfer.[1] The settlement agreement, however, gave only to plaintiff the authority to draft transfer documents. Consequently, according to plaintiff, defendant violated the settlement agreement when he had his own attorneys draft transfer documents. Relatedly, plaintiff also argued that defendant could have compelled the necessary individuals, KVK and Anjaneyulu Prathipati, the owner of Rasasri Developers, Inc., to sign the documents for the Devanhalli property transfer and the Rasasri option transfer.[2] Plaintiff additionally argued that she incurred unnecessary attorney fees in attempting to obtain her portion of the Merrill Lynch retirement accounts that defendant delayed paying her.

In response, defendant argued that the settlement agreement only required him to sign *necessary* documents for the Devanhalli property transfer and the Rasasri option transfer and that the documents drafted by plaintiff's lawyers were not actually necessary for the transfers. Thus, he argued, he did not violate the settlement agreement when he had his own attorneys draft transfer documents.[3] Defendant additionally argued that he could not force KVK and Prathipati to sign documents for the Devanhalli property transfer and the Rasasri option transfer. He further argued that it was Merrill Lynch and not he which caused the delay in transferring plaintiff's portion of the Merrill Lynch retirement accounts.

The trial court agreed with plaintiff and awarded attorney fees to her for fees incurred related to the Devanhalli property transfer, the Rasasri option transfer, and the Merrill Lynch retirement accounts. The trial court additionally awarded travel costs to plaintiff for her two unnecessary trips to India that defendant caused. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews the trial court's decision to award attorney fees for an abuse of discretion." *Featherston v Steinhoff*, 226 Mich App 584, 592-593; 575 NW2d 6 (1997). "A trial court abuses its discretion when its ruling falls outside the range of principled outcomes." *Patterson v Beverwyk*, 320 Mich App 670, 680; 922 NW2d 904 (2017) (citation omitted). Similarly, "[a]n error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of*

---

[1] Plaintiff's U.S.-based attorneys were Mahesh K. Nayak and Lynn Sirich. Her India-based attorney was Rampura Ravi.

[2] KVK's signature was required for Devanhalli property transfer, but the signatures of KVK and Prathipati were required for the Rasasri option transfer.

[3] Defendant's U.S.-based attorney was Mark A. Bank. His India-based attorney was Bharath Muranichara.

*Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). Furthermore, "[w]e review a trial court's findings of fact for clear error." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). "A finding of fact is clearly erroneous when no evidence supports the finding or, on the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *King v Mich State Police Dep't*, 303 Mich App 162, 185; 841 NW2d 914 (2013). Additionally, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).[4] Finally, a trial court's determination of foreign law is a question of law, MCL 600.2114a, and, therefore, is reviewed de novo, *Butler v Wayne Co*, 289 Mich App 664, 671; 798 NW2d 37 (2010).

## III. ANALYSIS

Plaintiff is entitled to trial court attorney fees for enforcing the settlement provisions relating to the Merrill Lynch retirement account and Rasasri option transfer provisions, but the trial court must determine on remand whether defendant violated the settlement agreement as to the Devanhalli property transfer before any attorney fees can be awarded for that issue. Plaintiff also is entitled to appellate attorney fees for at least the Merrill Lynch retirement account and Rasasri option transfer issues; the trial court's decision on remand will determine whether plaintiff also is entitled to appellate attorney fees for the Devanhalli property transfer.

In a divorce action, the trial court may award attorney fees if the requirements of MCR 3.206(D) are met:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> > (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or
> >
> > (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

MCR 3.206(D)(2) "provides two independent bases for awarding attorney fees and expenses" because the "or" in MCR 3.206(D)(2)(a) is disjunctive. *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015). While MCR 3.206(D)(2)(a) "allows payment of attorney fees based on one party's inability to pay and the other party's ability to do so," MCR

---

[4] A settlement agreement in a divorce action constitutes a contract. *Myland v Myland*, 290 Mich App 691, 700; 804 NW2d 124 (2010). Thus, the principles of contract interpretation apply to the settlement agreement.

3.206(D)(2)(b) "considers only a party's behavior, without reference to the ability to pay." *Id*. at 701. Thus, attorney fees may be awarded if the requirements of MCR 3.602(D)(2)(b) alone are met: when one party incurs attorney fees because the other party "refused to comply with a previous court order, despite having the ability to comply."

Attorney fees also may be awarded under a common-law exception to the American rule: "that an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Reed v Reed*, 265 Mich App 131, 164-165; 693 NW2d 825 (2005) (citation and quotation marks omitted).[5] When attorney fees are awarded based on this exception to the American rule, "the attorney fees awarded must have been incurred because of misconduct." *Id*. at 165. Importantly, "the fact that litigation has been lengthy is not by itself reason to conclude misconduct has occurred." *Id*. Rather, a trial court must make a specific finding of misconduct or that a party violated a court order to justify attorney fees under the common-law exception to the American rule. *Id*.

Finally, a settlement agreement in a divorce action constitutes a contract. *Myland v Myland*, 290 Mich App 691, 700; 804 NW2d 124 (2010). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Id*. at 468. Contracts are enforced "according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id*. The language of the settlement agreement is clear on its face and, therefore, is not ambiguous. Thus, we must enforce it as written.

Defendant argues that the trial court erred by awarding plaintiff attorney fees related to the Devanhalli property, the Rasasri option, and the Merrill Lynch retirement accounts. Each of these issues will be addressed separately.

## A. THE DEVANHALLI PROPERTY

In relevant part, as it related to the Devanhalli property, the settlement agreement provided:

> [Defendant] shall forthwith cause [KVK] to convey full title of the Devanhalli property to [plaintiff]. To effectuate the transfer of this property to [plaintiff], [defendant] shall cause [KVK] to execute a transfer and/or sale deed, referred to as a Release Deed; it is intended the Release Deed will convey full title of the Devanhalli Property to [plaintiff]. [Plaintiff]'s counsel in India prepared the Release Deed to effectuate this transaction. If this Release Deed is not sufficient to transfer in full this property to

---

[5] The American rule "provides that attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 274-275; 884 NW2d 257 (2016) (citation and quotation marks omitted).

[plaintiff], at any time as requested, [defendant] shall cause his brother, and [defendant] shall sign, as necessary, any document requested by [plaintiff] that will effectuate a full transfer of this property to [plaintiff].

By its plain language, the settlement agreement established that plaintiff would prepare a release deed for the transfer of the Devanhalli property to her. Additionally, if the documents prepared by plaintiff were insufficient for the transfer then defendant would sign and cause KVK to sign any document "as necessary" to transfer the Devanhalli property to plaintiff.

The trial court's findings related to the Devanhalli property focused on defendant's failure to cause KVK to sign the documents prepared by plaintiff for the Devanhalli property transfer. The trial court, however, failed to make any explicit findings regarding whether the documents proposed by plaintiff for the Devanhalli property transfer were *necessary* for the transfer. Instead, the trial court found that "the attorney fees expended for the delayed Devanhalli closing are reasonable and necessary due to [defendant's] non-compliance with the Agreement." Trial courts may take judicial notice of foreign law, MCL 600.2114a, and can even make rulings on foreign law based on testimony rather than actual citation to legal authority, but the trial court failed to do so here.[6] See also MRE 202 (stating that trial courts may take judicial notice of "the laws of foreign countries").

The trial court's finding that "the attorney fees expended for the delayed Devanhalli closing are reasonable and necessary due to [defendant's] non-compliance with the Agreement," on its face, concludes only that plaintiff's *attorney fees* were reasonable and necessary. The trial court's statements do not, however, state that any of the *documents* plaintiff submitted for the Devanhalli property transfer were necessary. Consequently, the trial court failed to make any conclusions as to whether the documents plaintiff provided defendant for the Devanhalli property transfer were necessary under Indian law to effectuate the transfer. As such, we are left without any basis for determining which documents, if any, were necessary for the Devanhalli transfer and, therefore, whether defendant violated the settlement agreement by failing to execute the Devanhalli property transfer earlier. Similarly, plaintiff and defendant have failed to provide us with any citation to Indian law to establish the necessity of any particular document to transfer the Devanhalli property to plaintiff. Accordingly, any arguments based on whether specific documents were necessary for the Devanhalli property transfer are abandoned. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008) ("Because plaintiff cites no authority for its argument, we reject it as abandoned on appeal."). Thus, we remand to the trial court to determine whether

---

[6] MCL 600.2114a provides:

A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this state shall give notice in his pleadings or other reasonable written notice. In determining the law of any jurisdiction or governmental unit thereof outside this state, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence. The court, not jury, shall determine the law of any governmental unit outside this state. Its determination is subject to review on appeal as a ruling on a question of law.

defendant refused to sign or failed to cause KVK to sign any documents that were *necessary* for the Devanhalli property transfer. Such a determination could be based on the testimony of Ravi and Muranichara already in the record.[7] Depending on the trial court's factual findings, it should make the following legal conclusions.

As relevant to the Devanhalli property, defendant violated the settlement agreement only if he failed to sign or to cause KVK to sign documents necessary for the Devanhalli property transfer. Therefore, if on remand the trial court determines that the documents defendant refused to cause KVK to sign were not necessary for the Devanhalli property transfer, then defendant did not violate the settlement agreement and the trial court abused its discretion by awarding attorney fees to plaintiff on that issue. In contrast, if the trial court determines on remand that defendant refused to sign or to cause KVK to sign documents that were in fact necessary for the Devanhalli property transfer, then he violated the settlement agreement and, for the reasons discussed below, plaintiff is entitled to attorney fees to enforce the Devanhalli property portion of the settlement agreement.

The trial court found that defendant made no effort to ensure that KVK signed any document for the Devanhalli property transfer until after plaintiff filed a motion in the trial court to enforce that portion of the settlement agreement. Furthermore, even after plaintiff filed her motion and terms for the transfer documents were agreed on, defendant claimed that the time frame for KVK's proposed return to India in October was reasonable. Plaintiff wished to obtain the Devanhalli property as soon as possible, however, because of potential eminent domain proceedings in India. Thus, the trial court ordered KVK to return to India in September 2017 to sign the Devanhalli property transfer documents. KVK did so shortly after the trial court entered its order.

The record supports the trial court's findings that defendant failed to facilitate the signing of the Devanhalli property transfer documents. The settlement agreement clearly established that

---

[7] We note that, while a trial court's determination of foreign law is a question of law, MCL 600.2114a, "[t]he question of credibility is generally for the fact-finder to decide." *Taylor v Mobley*, 279 Mich App 309, 314 n 5; 760 NW2d 234 (2008). The trial court failed to make a credibility determination regarding whether it found the testimony of Ravi or Muranichara more credible about which documents were necessary for the Devanhalli transfer. Because the parties failed to produce any actual Indian legal authority, the trial court -without doing its own research- could not determine the requirements of Indian law on which documents were necessary under Indian law for the Devanhalli transfer. Nor was any Indian law cited in the appellate briefs, and the issue of what documents were necessary was only raised in appellant's reply brief. This Court it is not a fact-finding court, and while a credibility determination is not typically necessary or appropriate to determine which documents were necessary for the Devanhalli transfer, any determination regarding which documents were necessary for the Devanhalli transfer will almost certainly require one if based purely on the existing record and arguments currently before this Court. See also MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").

plaintiff was required to draft documents for the Devanhalli property transfer. Defendant rejected the documents originally proposed by plaintiff and only agreed to have KVK sign the documents after plaintiff agreed to make changes to the transfer documents which defendant requested. Furthermore, defendant failed to make any effort to compel KVK to sign documents related to the Devanhalli property transfer until after plaintiff's August 2017 motion. Additionally, defendant argued that the Devanhalli property transfer could wait until KVK's desired return to India in October 2017. The settlement agreement, however, provided that defendant was required to compel KVK to sign necessary documents "at any time" plaintiff requested. By seeking to delay KVK's signing of the documents, defendant violated this portion of the settlement agreement as well. Thus, assuming the documents prepared by plaintiff were necessary for the transfer of the Devanhalli property transfer, plaintiff would be entitled to attorney fees under MCR 3.206(D)(2)(b) because defendant "refused to comply with a previous court order, despite having the ability to comply." See MCR 3.206(D)(2)(b); *Richards*, 310 Mich App at 700-701. Because attorney fees here would be justified under MCR 3.206(D)(2)(b), we need not address whether attorney fees also might be warranted under the common-law exception to the American rule or the terms of the settlement agreement.

## B. THE RASASRI OPTION

In relevant part, as it related to the Rasasri option, paragraph nine of the settlement agreement provided:

> b. [Defendant] shall forthwith cause the title holder to convey full title of [defendant]'s interest in the Rasasri Development Investment property to [plaintiff]. [Plaintiff]'s counsel shall prepare the necessary documents to effectuate this transaction.

> c. [Defendant] shall sign or cause another to sign any document presented to him by [plaintiff]'s attorney that is necessary to effectuate the transfer of this property and his property investment interest to [plaintiff].

As with the Devanhalli property, by its plain language, the settlement agreement established that plaintiff would prepare "the necessary documents" for the transfer of the Rasasri option to her. Additionally, defendant was required to "sign or cause another to sign *any document*" presented to him by plaintiff that was "*necessary* to effectuate the transfer" of the Rasasri option to her.

The trial court found, in reference to the Rasasri option, that it was "not in the position to determine the validity of a document under Indian law." Consequently, the trial court relied on the expert testimony of Ravi to find that the documents Ravi prepared for the Rasasri option transfer were necessary. By doing so, the trial court implicitly found more credible Ravi's testimony than Muranichara's testimony as to which documents were necessary for the Rasasri option transfer. A trial court's interpretation of foreign law is a question of law, MCL 600.2114a, that this Court reviews de novo, *Butler*, 289 Mich App 671. But credibility determinations are "generally for the fact-finder to decide." *Taylor v Mobley*, 279 Mich App 309, 314 n 5; 760 NW2d 234 (2008); see also note 8 of this opinion. Ravi and Muranichara both testified extensively regarding the documents they thought were necessary for the Rasasri option transfer. Both appear

to be competent lawyers and knowledgeable of Indian law. Thus, we are not definitely and firmly convinced that the trial court erred by finding Ravi's testimony more credible than Muranichara's testimony on this point. Accordingly, we accept the trial court's findings of fact that Ravi was the more credible witness on the issue, because those findings were not clearly erroneous, and we therefore conclude that the documents plaintiff provided to defendant for the Rasasri option transfer were necessary under Indian law.

As with the Devanhalli property, as relevant to the Rasasri option, defendant violated the settlement agreement only if he failed to sign or to cause KVK and Prathipati to sign documents prepared by Ravi for the transfer that were necessary to effectuate it. The trial court found that defendant drafted his own documents for the Rasasri option transfer despite the settlement agreement granting plaintiff sole authority to do so. The trial court additionally found that despite numerous communications regarding the documents relating to the Rasasri option transfer, it was not until the first evidentiary hearing in May 2019 that Nayak even learned that defendant would sign Ravi's proposed documents only if clause four was removed. Additionally, based on defendant's testimony that he could compel others to sign documents that he viewed as necessary, he had the ability to compel Prathipati and KVK to sign Ravi's proposed documents, especially after clause four was removed. Thus, he could have caused the Rasasri option transfer to be executed sooner.

The record supports these findings by the trial court. The settlement agreement granted the right to draft documents for the Rasasri option transfer only to plaintiff. Furthermore, defendant testified that he could compel others, necessarily including KVK and Prathipati, to sign documents that he deemed "proper and necessary." Defendant was willing to sign the Rasasri option documents drafted by Ravi, and specifically testified that he had been willing to do so after clause four was removed. The trial court found that defendant's willingness to sign the Rasasri option documents drafted by Ravi, after clause four was removed, showed that defendant considered those documents "proper and necessary" such that he could have caused KVK and Prathipati to sign them. While the connection between these two facts is not explicit, we are not definitely and firmly convinced that the trial court erred by linking them and coming to the conclusion that defendant could have caused KVK and Prathipati to sign the Rasasri option documents drafted by Ravi. Finally, defendant failed to take the necessary steps to arrange for KVK and Prathipati to sign the Rasasri option transfer documents. Thus, because under the trial court's interpretation of Indian law these documents were necessary for the Rasasri option transfer, plaintiff is entitled to attorney fees under MCR 3.206(D)(2)(b) because defendant "refused to comply with a previous court order, despite having the ability to comply." See MCR 3.206(D)(2)(b); *Richards*, 310 Mich App at 700-701. Because attorney fees were justified under MCR 3.206(D)(2)(b), we need not address whether attorney fees also could have been awarded under the common-law exception to the American rule or the terms of the settlement agreement.

## C. MERRILL LYNCH RETIREMENT ACCOUNTS

The settlement agreement directed defendant to transfer 50% of his Merrill Lynch retirement accounts to plaintiff. The trial court found that the delay in transferring defendant's Merrill Lynch retirement accounts to plaintiff was caused by defendant, not Merrill Lynch. Specifically, the trial court focused on evidence that Merrill Lynch was prepared to transfer the accounts to plaintiff as soon as defendant directed Merrill Lynch to do so.

We find no clear error in the trial court's findings. Nayak and Bank discussed at length the best way to distribute the Merrill Lynch retirement accounts. But even after a method of distribution was agreed upon, defendant still failed to transfer the Merrill Lynch retirement accounts to plaintiff. Defendant testified that he did everything that was asked of him to complete the transfer, but plaintiff introduced evidence showing that a Merrill Lynch employee was waiting for defendant to give her authorization to complete the transfer. The evidence presented by the parties was in conflict regarding whether it was defendant or Merrill Lynch that caused the delay in transferring the Merrill Lynch retirement accounts to plaintiff. "This Court should defer to the trial court's assessment of credibility in this regard." *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 569; 595 NW2d 176 (1999). Thus, the trial court did not err by finding that defendant caused the delay in transferring the Merrill Lynch retirement accounts to plaintiff.

The settlement agreement required defendant to transfer 50% of his Merrill Lynch retirement accounts to plaintiff "forthwith." Merriam-Webster's Collegiate Dictionary defines "forthwith" as "immediately." *Merriam-Webster's Collegiate Dictionary* (11th ed). The retirement accounts still had not been transferred to plaintiff 16 months after the entry of the judgment of divorce and settlement agreement. By delaying the transfer of the Merrill Lynch retirement accounts to plaintiff, defendant certainly did not effectuate the transfer immediately. Thus, defendant's conduct came within the ambit of MCR 3.206(D)(2)(b) because he "refused to comply with a previous court order, despite having the ability to comply." See MCR 3.206(D)(2)(b); *Richards*, 310 Mich App at 700-701.

### D. THE "MISSING" $15,300 IN ATTORNEY FEES

In his brief on appeal, defendant claimed that the trial court awarded $15,300 in fees above what plaintiff proved she incurred attempting to enforce the settlement agreement. In defendant's reply brief, however, he conceded that this argument was based on incorrect information. Thus, defendant no longer disputes that plaintiff incurred the $15,300 in attorney fees. Consequently, we will not address the issue further.

### E. PLAINTIFF'S TRAVEL COSTS

The entirety of defendant's legal argument on appeal is focused on the trial court's authority to award attorney fees to plaintiff. Defendant failed to make any legal argument about the trial court's ability to award costs to plaintiff for things other than attorney fees, such as plaintiff's travel costs to India. Thus, defendant's argument that the trial court erred by awarding costs to plaintiff for two flights to India is abandoned. See *Mettler Walloon*, 281 Mich App at 220 ("Because plaintiff cites no authority for its argument, we reject it as abandoned on appeal.").

### F. PLAINTIFF'S REQUEST FOR APPELLATE ATTORNEY FEES

In relevant part, the portion of the settlement agreement addressing attorney fees states:

In the event a party refuses or fails to perform any requirement to effectuate this Agreement, and a party has to seek relief from the Court and prevails on the relief

-11-

sought, the other party may be ordered to pay the attorney fees and costs reasonably incurred in the enforcement of this Agreement.

A settlement agreement in a divorce action constitutes a contract. *Myland*, 290 Mich App at 700. "Contractual provisions for payment of reasonable attorney fees are judicially enforceable. In other words, a contractual clause providing that in the event of a dispute the prevailing party is entitled to recover attorney fees is valid." *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007) (citations and quotation marks omitted). Furthermore, "[a] contractual provision for reasonable attorney fees in enforcing provisions of the contract may validly include allowance for services rendered upon appeal." *Central Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 548-549; 362 NW2d 823 (1984).[8]

The settlement agreement was a contract between plaintiff and defendant. By its plain terms, the settlement agreement established that if one party failed to comply with the settlement agreement's terms and the second party was forced to turn to the courts to enforce the settlement agreement, then the first party could be required to pay the second party's attorney fees. As discussed above, defendant violated the settlement agreement as to the Rasasri option transfer and the Merrill Lynch retirement accounts. Furthermore, defendant also may have violated the settlement agreement as to the Devanhalli property transfer, but the trial court must determine that issue on remand. This appeal is merely an extension of the trial court proceedings plaintiff began to enforce the settlement agreement and, therefore, she is entitled to appellate attorney fees incurred for any portions of the settlement agreement that defendant violated. Thus, plaintiff is entitled to appellate attorney fees related to the Rasasri option transfer and the Merrill Lynch retirement accounts, and plaintiff also may be entitled to appellate attorney fees related to the Devanhalli property transfer depending on how the trial court resolves that issue on remand. If the trial court determines that defendant violated this provision of the settlement agreement then plaintiff is entitled to trial court and appellate court attorney fees for that violation as well.

## IV. CONCLUSION

For the reasons stated earlier, we affirm in part and remand in part the trial court's award of attorney fees and travel costs to plaintiff. We do not retain jurisdiction. No costs, neither party having prevailed in full**.**

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

---

[8] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).