*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ESTATE OF LEONARD TYNER, by ARLINDA
HICKMAN, Personal Representative,

        Plaintiff/Counterdefendant-Appellee,

and

DEWAYNE BROWN,

        Intervenor-Appellee

v

SANDRA O'BEY,

        Defendant/Counterplaintiff-Appellant,

and

BING METALS GROUP, INC,

        Defendant.

UNPUBLISHED
July 1, 2021

No.  351784
Wayne Circuit Court
LC No.  18-015920-CH

Before:  REDFORD, P.J., and BORRELLO and TUKEL, JJ.

PER CURIAM.

       Defendant/counterplaintiff Sandra O'Bey appeals as of right the trial court's order granting in part and denying in part the competing motions for summary disposition filed by O'Bey and the Estate of Leonard Tyner.[1]  O'Bey argues that the trial court erred by concluding, on the basis that they had been in a meretricious relationship, that she did not have a valid contract with Leonard;

---

[1] Leonard died during the course of the trial court proceedings.  For ease of reference, we will refer to Leonard by his first name because his wife, Lue Ease Tyner, is also a relevant individual in this case.

-1-

the written contract attempted to compensate O'Bey for past performance; and O'Bey's reliance on Leonard's repeated verbal promises to pay O'Bey was unreasonable. O'Bey additionally argues that the trial court lacked subject matter jurisdiction to enter an order quieting title to the property at issue in this case. We agree in part and disagree in part with O'Bey.

Over the course of 30 years O'Bey gave Leonard about $750,000. She claims this money was a loan; Leonard claims that O'Bey gave him the money gratuitously. Leonard and O'Bey did not have a written contract until August 9, 2018. Now O'Bey seeks to recover the $750,000 from Leonard's estate under multiple legal theories. Disputes of material fact prevent any grant of summary disposition regarding O'Bey's unjust enrichment claims as well as her innocent misrepresentation claims based on oral contracts. O'Bey's innocent misrepresentation claims based on the written promissory note, however, fail due to a lack of consideration. Additionally, O'Bey did not actually challenge one of the trial court's reasons for granting summary disposition to Leonard's estate regarding O'Bey's fraud claims. Finally, O'Bey lacked standing to challenge whether the trial court had subject matter jurisdiction to enter the order quieting title in this case.

## I. UNDERLYING FACTS

### A. HISTORY OF THE PROPERTY AT ISSUE

This case arises out of a dispute regarding loans O'Bey allegedly made to Leonard and on his behalf over the course of their 30-year friendship; these loans were for an alleged business relationship to own and operate a property located at 1130 West Grand Boulevard, Detroit, Michigan (the property).[2] Bing Metals Group, Inc. conveyed the property via warranty deed to

---

[2] We note that the record is not clear regarding the actual street address of the property at issue in this case. The parties and the warranty deed refer to the property as having a "Grand River" address, but the promissory note, quitclaim deed, and order quieting title in this case all refer to the property as having a "Grand Boulevard" address. The property's legal description is identical in the warranty deed, promissory note, quitclaim deed, and order quieting title. As can be seen in the legal description of the property below, the property's legal description references "Grand Blvd.," not "Grand River":

> Lots 19 to 28, inclusive of Block 3, Bella Hubbard Subdivision of part of P.C. 77, North of Michigan Avenue, Detroit, Wayne County, Michigan, according to the plat thereof, recorded in Liber 4, Page 94, Wayne County Records. Also, vacant alley in the block bounded by West Grand Blvd., Magnolia St., Vinewood Ave., and the railroad right of way, except that portion of said lots deeded to the City of Detroit for boulevard purposes and included in the Grand Blvd. Also, all that part of Lots 22 to 28 inclusive, Block 3 of the plat of Bella Hubbard Subdivision of part of P.C. 77, North of Michigan Ave., Springwell Township, City of Detroit, Wayne County, Michigan according to the plat thereof as recorded in Liber 4, Page 94 of plats, Wayne County Records, being all that part of West Grand Blvd., lying between the East line of West Grand Blvd. 150 feet wide as now established and a line 29 feet Westerly thereof, and lying between the South line of Magnolia Street

Lue Ease Tyner on March 9, 2003. Lue Ease died on April 11, 2011; she apparently died intestate with her husband, Leonard, as her sole heir. As such, the parties agree that Leonard should have inherited the property through probate.

Probate proceedings regarding Lue Ease's estate began in Oakland County Probate Court shortly after Lue Ease's death, but her estate was administratively closed before the property was distributed from her estate. Leonard did not obtain the property's title until after his death when the trial court, in this case, entered an order on December 12, 2019, quieting title to the property and transferring it to Leonard's estate.

## B. O'BEY'S PAYMENTS TO LEONARD

O'Bey and Leonard were friends for roughly 30 years. Additionally, they had a romantic relationship for an unspecified 15 years. Over the course of their 30-year friendship, O'Bey gave Leonard about $750,000. O'Bey claims she gave Leonard this money as part of a business relationship premised on his ownership of the property. According to O'Bey, Leonard always promised he would repay her, but he never specified when he would repay her and they did not have a written contract until August 9, 2018. According to Leonard, however, all of the money O'Bey gave him was gratuitous and he never promised to repay her.

The situation came to a head in August 2018 while Leonard was hospitalized following a stroke. On August 9, 2018, O'Bey presented Leonard with two documents: a quitclaim deed for the property and a promissory note stating that Leonard would repay O'Bey the $750,000 he owed her by selling the property. The promissory note provided, in relevant part:

> For consideration received, (funds advanced by Sandra O'Bey), payor, his heirs or assigns promise to pay the sum of <u>$ 750,000.00</u> Thousand Dollars ($ 750,000.00) to SANDRA O'BEY within [sic] upon the sale of the building located at 1130 West grand Blvd., Detroit, Michigan, which was formerly used by Sandra O'Bey and Leonard Tyner for leasing purposes. Said property is described as: [the property's legal description.]
>
> * * *
>
> Said building shall be sold or listed for sale at a reasonable price within 2-years, and the lump payment shall be payable at 17755 Gregory Road, Gregory, Michigan 48137 upon closing.

O'Bey and the notary who notarized both documents claim that Leonard signed the documents and that he was mentally competent to do so. In contrast, Leonard denied signing the documents.

---

60 feet wide as now established and the Northwesterly line of the Grand Trunk Railroad right of way.

Thus, we will use the "Grand Boulevard" address in this opinion.

## C.  PROCEDURAL HISTORY

Leonard filed a complaint in December 2018 seeking to quiet title to the property.  O'Bey answered the complaint, claiming she was entitled to the property.  She also filed a complaint of her own alleging that Leonard owed her $750,000.  She alleged that his failure to repay her unjustly enriched Leonard and breached his contracts with O'Bey.  O'Bey further alleged that Leonard either fraudulently induced her to loan him money or that his innocent misrepresentation caused her to loan him the $750,000.  Leonard and O'Bey then filed competing motions for summary disposition; during this time Leonard died and his estate was substituted as a party in the case.

Following the parties' competing motions for summary disposition, the trial court entered an order quieting title to the property and transferring it to Leonard's estate.  The trial court then turned to the parties' motions for summary disposition relating to O'Bey's payments to Leonard. In doing so, it granted summary disposition to Leonard's estate on O'Bey's breach of contract claims, holding that the promissory note was not supported by valid consideration because it relied on past consideration, it also ruled that the statute of frauds barred O'Bey's oral contract claims. The trial court granted summary disposition to Leonard's estate on O'Bey's remaining claims as well, holding that all of the money O'Bey paid Leonard was presumptively gratuitous because: (1) they had been in a meretricious relationship, (2) O'Bey failed to plead her fraud in the inducement claim with sufficient particularity, and (3) O'Bey's innocent misrepresentation claim failed because she was not in privity of contract with Leonard.  Finally, the trial court concluded that, although most of O'Bey's unjust enrichment claims failed because her payments to Leonard were presumptively gratuitous due to their meretricious relationship, she was entitled to repayment for property tax payments she made within the six-year statute of limitations; it also concluded that the statute of frauds barred O'Bey's promissory estoppel claims.  This appeal followed.

## II.  STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo.  *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012).  This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party."  *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018).  "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)."  *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120); slip op at 4.  Indeed, summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."  *Patrick*, 322 Mich App at 605.  "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party."  *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).  "Only the substantively admissible evidence actually proffered may be considered."  *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted).  "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient."  *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

The moving party has the initial burden to support its claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party demonstrates that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present sufficient evidence to dispute that fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). "Conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action." *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003).

Finally, "[w]e review de novo questions of statutory interpretation." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). When the language of a statute is clear and unambiguous, this Court "will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). Similarly, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Furthermore, this Court also reviews de novo the question whether the statute of frauds bars a contract claim. *Kloian v Domino's Pizza, LLC,* 273 Mich App 449, 458; 733 NW2d 766 (2006).

III. UNJUST ENRICHMENT

O'Bey argues that the trial court erred by granting summary disposition to Leonard's estate on her unjust enrichment claims. We agree. The trial court erred by making a factual finding that Leonard and O'Bey had been in a meretricious relationship and, by extension, granting summary disposition to Leonard's estate regarding O'Bey's unjust enrichment claims. Disputes of material fact regarding when O'Bey's unjust enrichment claims accrued and whether Leonard promised to repay her prevent any grant of summary disposition regarding O'Bey's unjust enrichment claims at this time.

Michigan has long followed the rule that a party cannot sustain an unjust enrichment claim if the parties have an express contract. See *AFT Michigan v Michigan*, 303 Mich App 651, 660-661; 846 NW2d 583 (2014) ("[T]o prevent unjust enrichment, the law will imply a contract when the defendant has been inequitably enriched at the expense of the plaintiff. Courts, however, may not imply a contract if the parties have an express contract covering the same subject matter."). O'Bey raises her unjust enrichment claim to the extent that she and Leonard did not have an express contract. Whether O'Bey and Leonard actually had an express contract is addressed in Part IV. As discussed in further detail there, the promissory note was not a valid contract for want of consideration, and disputes of material fact prevent any conclusion at this time regarding whether any oral contracts existed between them.

"Unjust enrichment is an equitable doctrine." *Genesee Co Drain Commr v Genesee Co*, 321 Mich App 74, 78; 908 NW2d 313 (2017), aff'd sub nom *Wright v Genesee Co*, 504 Mich 410; 934 NW2d 805 (2019). "The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit. In such instances, the law operates to imply a contract in order to prevent unjust enrichment." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013). "That a person benefits from another is not alone sufficient to require

the person to make restitution for the benefit." *NL Ventures VI Farmington, LLC v City of Livonia*, 314 Mich App 222, 241-242; 886 NW2d 772 (2015). Indeed, "[e]ven where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Id*. (quotation marks and citation omitted). Stated differently, "[a] person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons." *Estate of McCallum*, 153 Mich App 328, 335; 395 NW2d 258 (1986) (quotation marks and citation omitted).[3]

The trial court concluded that the payments O'Bey made to Leonard were presumably gratuitous because they had been in a meretricious relationship.

> [S]ervices rendered during a meretricious relationship are presumably gratuitous. To overcome this presumption, plaintiff must show that she expected compensation from defendant at the time she rendered the services and that defendant expected to pay for them. The trier of fact resolves this question by considering all the circumstances, including the type of services rendered, the duration of the services, the closeness of the relationship of the parties, and the express expectations of the parties. [*Featherston v Steinhoff*, 226 Mich App 584, 589; 575 NW2d 6 (1997) (quotation marks and citations omitted).]

Black's Law Dictionary defines a meretricious relationship as "[a] stable, marriage-like relationship in which the parties cohabit knowing that a lawful marriage between them does not exist." *Black's Law Dictionary* (11th ed). An examination of this Court's opinions utilizing the phrase "meretricious relationship" reveals that this Court accords the phrase the same meaning as set forth in Black's Law Dictionary. See, e.g., *Featherston*, 226 Mich App 584; *Carnes v Sheldon*, 109 Mich App 204; 311 NW2d 747 (1981); *Tyranski v Piggins*, 44 Mich App 570; 205 NW2d 595 (1973).

The trial court concluded, without explaining its reasoning, that Leonard and O'Bey had been in a meretricious relationship. The trial court erred by doing so for multiple reasons, the first of which is that such a factual finding should not be made at the summary disposition stage of proceedings. See *Barnes*, ___ Mich App at ___; slip op at 4. Additionally, the record does not establish that Leonard and O'Bey ever cohabitated. Consequently, cohabitation, an essential element of a meretricious relationship, is absent in this case. Finally, a meretricious relationship, even if it did exist, would do no more than create a presumption that O'Bey's payments were gratuitous. Whether that presumption has been overcome, however, is a question for the jury. See *Featherston*, 226 Mich App at 589. Thus, the trial court erred by concluding that the payments O'Bey made to Leonard were gratuitous based on a meretricious relationship.

---

[3] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

As for whether the elements of an unjust enrichment claim have been met, disputes of material fact prevent summary disposition on this issue. Leonard undoubtedly received a monetary benefit from O'Bey over the course of their friendship and romantic relationship. As such, the first element of unjust enrichment has been met. See *Bellevue Ventures, Inc*, 302 Mich App at 64. Whether it would be inequitable to allow Leonard's estate to retain this benefit, however, presents a dispute of material fact. Leonard averred that he never promised to repay O'Bey and that everything she gave him was gratuitous due to their romantic relationship. O'Bey, however, claims that Leonard always promised to repay her. Grant supported O'Bey's testimony by testifying that he frequently heard Leonard say that he would pay O'Bey back. Viewing the record in the light most favorable to O'Bey, as we are required to do here, there is a dispute of material fact regarding whether Leonard ever promised to repay O'Bey for the money she lent him. If he did make such a promise, then it would be inequitable to allow his estate to retain that benefit. If he did not, however, then equity does not require that his estate repay O'Bey. Thus, a dispute of material fact prevents a grant of summary disposition for any unjust enrichment claim by O'Bey that is not barred by the statute of limitations.

Our Supreme Court "has long recognized that statutes of limitation may apply by analogy to equitable claims." *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 127 n 9; 537 NW2d 596 (1995). Similarly, MCL 600.5815 provides that "[t]he prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought. The equitable doctrine of laches shall also apply in actions where equitable relief is sought." The statute of limitations for filing an unjust enrichment claim is therefore the same six-year period as that prescribed for a breach of contract claim. See MCL 600.5807(9) (establishing a six-year period of limitations for general breach of contract claims). "[A] claim of breach of contract accrues when the promisor fails to perform under the contract." *Cordova Chem Co v Dept of Natural Resources*, 212 Mich App 144, 153; 536 NW2d 860 (1995).

Leonard moved for summary disposition on this issue. Thus, we must view the record in the light most favorable to O'Bey when considering her unjust enrichment claims. See *Patrick*, 322 Mich App at 605. The trial court did not consider the equitable defense of laches, and Leonard's estate does not argue on appeal that it applies here. Thus, we will not address that issue. Whether the statute of limitations applies to O'Bey's unjust enrichment claims, however, is properly before this Court. As discussed, the normal six-year statute of limitations for breach of contract claims applies to unjust enrichment claims. Thus, the statute of limitations bars all of O'Bey's claims that arose more than six years before February 6, 2019, the date she filed her counterclaim.

The record fails to establish when Leonard allegedly promised he would repay O'Bey.[4] "A loan made with no fixed time of repayment is payable on demand." *Jackson v Estate of Green*, 484 Mich 209, 217; 771 NW2d 675 (2009). The record, however, fails to establish when O'Bey demanded that Leonard repay her. Additionally, "the absence of a specific time for repayment

---

[4] As used in this opinion, the phrase "when Leonard promised he would repay O'Bey" refers to point in time in the future that Leonard allegedly promised O'Bey would receive his repayment, not the point in time at which Leonard made the promise that he would repay O'Bey.

does not allow a creditor to withhold this demand for an indefinite period of time. In the absence of an agreement to the contrary, we presume that the parties intended [the] plaintiff's demand for repayment to occur within a reasonable amount of time." *Id.* Indeed, "[i]t is a general rule of law that where no time is stipulated, a reasonable time will be presumed. Reasonable time depends upon the facts and circumstances of each case." *Id.*, quoting *Pierson v Davidson*, 252 Mich 319, 324, 233 NW 329 (1930). "Determining what constitutes a reasonable amount of time to request repayment of a loan is necessarily a factual question properly decided by the jury." *Jackson*, 484 Mich at 217. Consequently, Leonard did not break his promise to repay O'Bey until a "reasonable time" had passed. That question must be answered by the jury and its answer will determine when the statute of limitations began to run. Thus, the trial court erred by concluding that the statute of limitations barred any of O'Bey's unjust enrichment claims because the jury must answer a factual question for that determination to be made.

## IV. INNOCENT MISREPRESENTATION

O'Bey argues that the trial court erred by granting summary disposition to Leonard's estate on her innocent misrepresentation claims. We agree in part and disagree in part. O'Bey's innocent misrepresentation claim premised on the promissory note fails for lack of consideration, but disputes of material fact regarding her innocent misrepresentation claims premised on the oral contracts prevent summary disposition of those claims. Additionally, the statute of frauds does not bar enforcement of the oral contracts and the record is insufficient to determine whether the statute of limitations bars any of O'Bey's claims based on the oral contracts.

## A. INNOCENT MISREPRESENTATION

Innocent misrepresentation is a type of fraud claim. *M&D, Inc v WB McConkey*, 231 Mich App 22, 26-29; 585 NW2d 33 (1998).

> A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation. The innocent misrepresentation rule represents a species of fraudulent misrepresentation but has, as its distinguished characteristics, the elimination of the need to prove a fraudulent purpose or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff, and has, as added elements, the necessity that it be shown that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure to the benefit of the party making the misrepresentation. Thus, the party alleging innocent misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false. Finally, in order to prevail on an innocent misrepresentation claim, a plaintiff must also show that the plaintiff and defendant were in privity of contract. [*M&D, Inc v WB McConkey*, 231 Mich App 22, 27-28; 585 NW2d 33 (1998) (citations omitted).]

Consequently, an innocent misrepresentation claim requires the plaintiff to establish that (1) he or she detrimentally relied on a false representation; (2) the plaintiff's injury benefitted the party who

made the representation; and (3) privity of contract. *Id*. Additionally, "the party alleging innocent misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false." *Id*. at 28.

O'Bey claims that Leonard repeatedly told her he owned the property and that this representation induced her to repeatedly give him money because she believed she was engaged in a business relationship with the property's owner. The record clearly establishes that Leonard did not own the property until after his death, when the trial court entered an order quieting title to the property and transferring it from Lue Ease's estate to Leonard's estate. Consequently, any representation Leonard made to O'Bey that he owned the property was false.

In her deposition, O'Bey acknowledged that she knew Lue Ease owned the property, but she testified that she believed Leonard operated the property with Lue Ease and that he had the ability to bring in a partner. Additionally, O'Bey also believed Leonard owned the property after Lue Ease's death, in large part because that was what Leonard told her. Consequently, Leonard's representation that he owned the property was false and O'Bey's interest in the property clearly benefitted Leonard because he received hundreds of thousands of dollars from her as a result of her belief that he owned the property. Thus, when viewing the record in the light most favorable to O'Bey, the only remaining element for her innocent misrepresentation claim is whether she and Leonard were in privity of contract.

## B. PRIVITY OF CONTRACT

"The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012) (quotation marks and citation omitted). "To have consideration there must be a bargained-for exchange. There must be a benefit on one side, or a detriment suffered, or service done on the other. Courts do not generally inquire into the sufficiency of consideration." *Gen Motors Corp v Dep't of Treasury, Revenue Div*, 466 Mich 231, 238-239; 644 NW2d 734 (2002) (quotation marks, alteration, and citations omitted). Relevant to this case, past consideration does not establish sufficient consideration for a subsequent agreement. *Shirey v Camden*, 314 Mich 128, 138; 22 NW2d 98 (1946). Nonetheless, if consideration refers to past *and future* benefits or detriments then it is sufficient to support a valid contract; this is referred to as continuing consideration. *Riggs v Riggs' Estate*, 232 Mich 579, 590; 206 NW 508 (1925).

"In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Id*. at 468. Contracts are enforced "according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id*.

## 1. VALIDITY OF THE PROMISSORY NOTE

In relevant part, the promissory note provided

For consideration received, (funds advanced by Sandra O'Bey), payor, his heirs or assigns promise to pay the sum of $ 750,000.00 Thousand Dollars ($ 750,000.00) to SANDRA O'BEY within [sic] upon the sale of the building located at 1130 West grand Blvd., Detroit, Michigan, which was formerly used by Sandra O'Bey and Leonard Tyner for leasing purposes. Said property is described as: [the legal description of the property]

By its plain terms, the promissory note established that Leonard would pay O'Bey $750,000 for "consideration received," which the promissory note defined as "funds advanced by" O'Bey. This is clearly past consideration. O'Bey argues that the promissory note established continuing consideration, not past consideration, because the promissory note did not require Leonard to pay O'Bey until the property was sold. O'Bey is correct that the promissory note did not require immediate payment from Leonard, but the consideration offered by O'Bey nevertheless existed entirely in the past. The promissory note's plain language referenced only past consideration from O'Bey, and did not contemplate any additional consideration O'Bey was required to provide between the signing of the promissory note and her receipt of payment. Thus, the promissory note was not supported by proper consideration and, therefore, was not a valid contract. See *Shirey*, 314 Mich at 138. Consequently, the trial court did not err by granting summary disposition to Leonard's estate regarding O'Bey's innocent misrepresentation claims premised on the promissory note.

## 2. VALIDITY OF THE ORAL CONTRACTS

The analysis does not end here, however, because O'Bey's innocent misrepresentation claim is also supported by the numerous alleged oral contracts between herself and Leonard, formed when Leonard promised each time O'Bey gave him money to repay her. Leonard and O'Bey dispute whether he ever actually promised to repay her and, therefore, a dispute of material fact precludes a ruling regarding whether the oral contracts actually existed. Nevertheless, the statute of frauds and statute of limitations may nevertheless bar O'Bey's innocent misrepresentation claims based on the oral contracts. The statute of frauds could establish that, despite an agreement between Leonard and O'Bey, no valid contract existed; additionally, the statute of limitations could bar O'Bey's innocent misrepresentation claims as untimely.

### a. STATUTE OF FRAUDS

"The statute of frauds exists for the purpose of preventing fraud or the opportunity for fraud, and not as an instrumentality to be used in the aid of fraud or prevention of justice." *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 526-527; 644 NW2d 765 (2002). Contracts that fall within any portion of the statute of frauds are unenforceable. See, e.g., *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Products, Inc*, 265 Mich App 105, 110-114; 693 NW2d 394

(2005) (holding that an oral contract was unenforceable because it fell within one portion of the statute of frauds). In relevant part, MCL 566.132[5] states:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> > (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

"[I]f there is any possibility that an oral contract is capable of being completed within a year, it is not within the statute of frauds, even though it is clear that the parties may have intended and thought it probable that it would extend over a longer period and even though it does so extend." *Hill v Gen Motor Acceptance Corp*, 207 Mich App 504, 509-510; 525 NW2d 905 (1994) (citation and quotation marks omitted; alteration in original).

The trial court concluded that the statute of frauds voided all of the oral contracts in this case because the promissory note provided that the property would be sold in two years. But the promissory note provided that the property "shall be sold or listed for sale at a reasonable price *within 2-years*," not two years in the future. (Emphasis added). Leonard's oral promises were not oral versions of the promissory note and they did not establish when he would repay O'Bey.[6] As such, no term of the oral contract precluded Leonard from immediately repaying her. Consequently, the trial court erred by concluding that the oral contracts fell within the statute of frauds.

### b. STATUTE OF LIMITATIONS

There is no specific statute of limitations for innocent misrepresentation claims. As such, the general six-year statute of limitations applies to O'Bey's innocent misrepresentation claims. See MCL 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."). "[T]he period of limitations runs from the time the claim accrues," unless an exception not at issue in this case applies. MCL 600.5827. "[T]he claim accrues at the time the wrong upon which the

---

[5] MCL 566.132 was amended by 2020 PA 63 after litigation began in this case. Relevant to this case, the amendment added the comma in the phrase "or promise, is in writing and signed." The amendment does not affect the analysis of this issue.

[6] To the extent that O'Bey argues to the contrary that the oral promises were oral versions of the promissory note and, therefore, the statute of limitations for those claims began to run on the date the promissory note was signed, this claim is plainly not supported by the record. O'Bey and a friend of Leonard and O'Bey both testified, in their depositions, that Leonard repeatedly promised to repay O'Bey for the money she gave him, but neither one testified that these oral promises had the same terms as the promissory note.

-11-

claim is based was done regardless of the time when damage results." *Id*. See also *Boyle v General Motors Corp*, 468 Mich 226, 231; 661 NW2d 557 (2003) (addressing accrual of claims under MCL 600.5813).

As explained in Part III, however, the record fails to establish when Leonard allegedly promised his repayment would take place. As such, he was required to do so in a "reasonable time" that the jury must determine. See *Jackson*, 484 Mich at 217.[7] Consequently, Leonard did not breach his promise to repay O'Bey until a "reasonable time" had passed following demand. That question must be answered by the jury, and that answer will determine when the statute of limitations began to run. Thus, the trial court erred by concluding that the statute of limitations barred any of O'Bey's innocent misrepresentation claims based on oral contracts.

## C. INNOCENT MISREPRESENTATION CONCLUSION

Viewing the record in the light most favorable to O'Bey, she has established all of the required elements for an innocent misrepresentation claim with the exception of privity of contract. The privity of contract component of O'Bey's innocent misrepresentation claim falls into two categories: the written promissory note and the oral contracts.

The promissory note was not supported by proper consideration because it relied on past consideration. Thus, the trial court did not err by granting summary disposition to Leonard on O'Bey's innocent misrepresentation claims based on the promissory note. The oral contracts also present disputes of material fact regarding whether Leonard agreed to repay O'Bey. Additionally, the statute of limitations and statute of frauds do not bar O'Bey's innocent misrepresentation claims based on the oral contracts because the record fails to establish when Leonard promised repayment would take place. As such, summary disposition on this issue would be inappropriate at this time.

## V. FRAUD IN THE INDUCEMENT

O'Bey abandoned this issue because she failed to challenge the trial court's conclusion that she did not plead her fraud claim with sufficient particularity. Consequently, we will not address it on the merits.

O'Bey failed to address, in her brief on appeal, the issue of whether she pleaded her fraud claims with sufficient particularity. As such, the issue is abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."). The trial court granted summary disposition to Leonard's estate on O'Bey's fraud claims on two grounds: (1) lack of pleading with sufficient particularity and (2) O'Bey's reliance on Leonard's promises to repay her were unreasonable. Based on our reading of the trial court's opinion and

---

[7] As discussed in Part III, when no time is specified for performance in a contract a "reasonable time" is presumed, which depends on the "facts and circumstances of each case." *Jackson*, 484 Mich at 217.

order, each ground could independently support its order. As such, O'Bey failed to actually challenge one of the grounds supporting the trial court's order granting summary disposition to Leonard's estate on O'Bey's fraud claims. Thus, O'Bey failed to challenge the entirety of the trial court's order granting summary disposition to Leonard's estate on this issue. Consequently, we will not address this issue further.

## VI. SUBJECT MATTER JURISDICTION

O'Bey argues that the trial court lacked subject matter jurisdiction to enter its order quieting title to the property and transferring it to Leonard's estate. We decline to address that issue, however, because O'Bey lacks standing to challenge the trial court's subject matter jurisdiction.

At the trial court level "a litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010) (*LSEA*). But if no legal cause of action is available to a litigant, "[a] litigant may have standing . . . if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Id*.

> In general, standing requires a party to have a sufficient interest in the outcome of litigation to ensure vigorous advocacy and in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. [*Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 621; 873 NW2d 783 (2015) (citation and quotation marks omitted).]

O'Bey has not presented any record evidence establishing that she had standing to challenge the trial court's order quieting title to the property. In essence, this would have required O'Bey to establish that she had an interest in the probate proceedings related to Lue Ease's estate. O'Bey has failed to do so. Instead, O'Bey argues that the trial court's order quieting title may have affected potential creditors of Lue Ease's estate; her claim revolves around being a creditor of Leonard's estate. O'Bey does not actually allege, in her brief on appeal, that she was a creditor of Lou Ease's estate. Indeed, in her brief on appeal, O'Bey stated that she "may have had an actionable claim against Lue Ease Tyner's estate relative to the improvements made to [the property]." O'Bey's hypothetical argument is insufficient to establish that she had standing to challenge the trial court's order quieting title to the property. See *id*. Thus, O'Bey lacked standing, and we affirm the trial court's order quieting title to the property and transferring it to Leonard's estate.

## VII. CONCLUSION

For the reasons stated in this opinion, we affirm in part and reverse in part the trial court's order granting summary disposition to Leonard's estate. We additionally affirm its order quieting title to the property and transferring it to Leonard's estate. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Stephen L. Borrello
/s/ Jonathan Tukel