*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLAN DESCHANE,

              Plaintiff-Appellant,

v

TRACY KLUG,

              Defendant-Appellee.

FOR PUBLICATION
December 15, 2022
9:20 a.m.

No. 360677
Marquette Circuit Court
LC No. 20-059437-CZ

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

YATES, J.

Plaintiff, Allan Deschane, and defendant, Tracy Klug, started dating in 2008 and then chose to live together in a house that defendant owned. Plaintiff and defendant had children together and combined their resources. In April 2020, defendant used inherited money that had been transferred by wire into the parties' joint bank account to purchase another home, which was titled only in her name. Three months after that, defendant ended the relationship and asked plaintiff to leave the new home. That prompted plaintiff to file suit alleging that defendant had defrauded him and that he was entitled to a share of each home and the parties' joint bank account. The trial court thought otherwise and awarded summary disposition under MCR 2.116(C)(10) to defendant on plaintiff's claims for fraud, quantum meruit, and unjust enrichment. We conclude that the trial court correctly refused to recognize any interest of plaintiff in either home or any right to a share of the inherited money that passed through the parties' joint bank account, so we shall affirm.

## I. FACTUAL BACKGROUND

The parties seem to agree on the factual background of this dispute. Plaintiff and defendant began dating in 2008. Plaintiff moved in with defendant and her two daughters. The four of them lived in the house at 260 County Road KCH that defendant owned. Defendant bought that house in 2002, and only her name was on the deed. The parties had two children together, opened joint bank accounts, and combined their resources. During the relationship and cohabitation, defendant handled the majority of the finances, which included managing bank accounts and paying the bills. Defendant worked until 2011, when she started receiving unemployment and disability payments after she was diagnosed with cancer. Plaintiff maintained full-time employment throughout the

-1-

relationship. In April 2020, defendant inherited approximately $80,000 and bought a second home at 8765 County Road 550, making the down payment of $80,000 from a joint bank account that is at issue on appeal. During their relationship, both parties deposited money into that joint account, which they used to pay bills and the mortgages for both houses. In July 2020, defendant ended the relationship and asked plaintiff to leave the homes.

On September 16, 2020, plaintiff responded to the breakup by filing a four-count complaint against defendant alleging fraudulent misrepresentation, silent fraud, quantum meruit, and unjust enrichment. According to plaintiff, defendant repeatedly assured him during their relationship that he was a co-owner of both homes and that she would add his name to the legal documents defining ownership of the homes. Plaintiff contended that defendant was liable to him for the money, time, and improvements he put into the homes. Defendant denied that she had made any representations of that sort.

In the fullness of time, defendant sought summary disposition under MCR 2.116(C)(10), contending that any statements she made to plaintiff about adding his name to the title documents were mere future promises, that plaintiff could not prove that defendant knew any representations were false when she made them, and that plaintiff had not relied upon the representations. In addition, defendant asserted that the parties' meretricious relationship barred plaintiff's quantum-meruit and unjust-enrichment claims. In his response, plaintiff referred to the parties' joint bank account that was used to buy the second home and insisted that he was entitled to half of the money withdrawn to pay for that home.

The trial court awarded defendant summary disposition under MCR 2.116(C)(10), ruling that any representations defendant made had been mere future promises and that plaintiff had not demonstrated that he relied on the representations. For the quantum-meruit and unjust-enrichment claims, the trial court reasoned that there was no evidence of any contract separate from the parties' relationship. The trial court denied plaintiff's informal motion to amend his complaint, stating that plaintiff could not possibly recover on any of his theories. The trial court did not address plaintiff's claim to the joint bank account. Plaintiff then appealed.

## II. LEGAL ANALYSIS

On appeal, plaintiff has challenged the trial court's decision to award summary disposition to defendant under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) . . . tests the *factual* sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id.* Such a "genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks omitted). We review de novo the trial court's decision on the motion for summary disposition. *Id.* at 159. With these principles in mind, we shall address the viability of plaintiff's claims.

## A. FRAUD

Plaintiff's complaint sets forth separate claims for fraudulent misrepresentation and silent fraud. In Michigan, "fraud must be established by clear and convincing evidence and must never be presumed." *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 457; 559 NW2d 379 (1996). To win on a fraudulent-misrepresentation claim, "plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury." *Roberts v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009). Future promises, which are usually contractual, "cannot be the basis of an action for fraud" because the fraudulent statements must relate to "past or existing facts." *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 444; 505 NW2d 275 (1993) (quotation marks omitted). Michigan also recognizes silent fraud. *Roberts*, 280 Mich App at 403. "A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Id*. (quotation marks and citations omitted). But to prevail on a claim for silent fraud, plaintiff must establish the existence of "a legal or equitable duty of disclosure" as well as "some type of representation by words or actions that was false or misleading and was intended to deceive." *Id*. at 404.

Here, any alleged representations constituted future promises to make plaintiff a co-owner of the houses. To be sure, plaintiff may well have believed that defendant would add his name to the titles to both homes. He alleged in his complaint that defendant had told him that "she *would put* [him] on the title to the [first] home" and that he "*would be* joint owner of the [second] house." His deposition testimony reinforced this point. But even assuming defendant made representations to plaintiff about the homes, those representations constituted, at most, broken promises, and "[a] mere broken promise does not constitute fraud, nor is it evidence of fraud." *Marrero*, 200 Mich App at 444. Accordingly, plaintiff's fraudulent-misrepresentation claim fails for that reason.

Beyond that, plaintiff has failed to show any reliance upon the representations. The record contains no evidence that plaintiff put money or time into the homes in exchange for co-ownership. When plaintiff was asked if there had been "any expectation that . . . the two of you would divide things up in any specific fashion," he replied, "No." Plaintiff did not keep track of his hours spent improving the homes. The absence of record-keeping combined with the parties' actions during the relationship revealed that plaintiff's acts were the result of the parties' relationship, rather than any form of reliance upon defendant's representations about co-ownership of the homes. In other words, plaintiff's acts were gratuitous in that he acted as he did simply because of his relationship with defendant. Thus, we agree with the trial court that the record contains no evidence of reliance sufficient to support a claim for fraudulent misrepresentation.

For the same reasons, plaintiff's silent-fraud claim fails. Plaintiff contends that reliance is not an element of silent fraud, but our prior decisions tell a different story. E.g., *Hamade v Sunoco, Inc (R & M)*, 271 Mich App 145, 171; 721 NW2d 233 (2006) ("plaintiff's claims based on silent fraud, fraudulent misrepresentation, and innocent misrepresentation, all of which require reliance

on a misrepresentation, must also fail"); *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 504; 579 NW2d 411 (1998) ("The various species of fraud alleged here [that include silent fraud] all require reliance on a misrepresentation."); *Clement-Rowe v Mich Health Care Corp*, 212 Mich App 503, 508; 538 NW2d 20 (1995) ("A claim of silent fraud requires a plaintiff [to] allege that the defendant intended to induce him to rely on its nondisclosure and that defendant had an affirmative duty to disclose."). Indeed, we recently surveyed various decisions on this subject and concluded definitively "that reliance is an essential element of a claim for silent fraud." *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 390-391 n 8; 928 NW2d 227 (2018). Furthermore, the two parties were involved in a meretricious relationship, and plaintiff has failed to establish the existence of "a legal or equitable duty of disclosure" in that context. See *Roberts*, 280 Mich App at 404. Even if defendant at some point had considered it a matter of affection or moral obligation to make plaintiff a co-owner of the homes, defendant had no legal or equitable duty of disclosure that required her to inform plaintiff that she had changed her mind or that she never had any sense of obligation in the first place. Consequently, we must affirm the trial court's award of summary disposition on the silent-fraud claim.

## B. QUANTUM MERUIT AND UNJUST ENRICHMENT

Plaintiff's quantum-meruit and unjust-enrichment claims are more promising than his fraud claims. After all, plaintiff contributed funding and sweat equity to the value of the homes, but he received no compensation from defendant for those contributions. Under Michigan law, "claims for unjust enrichment and quantum meruit have historically been treated in a similar manner." *NL Ventures VI Farmington, LLC v Livonia*, 314 Mich App 222, 241; 886 NW2d 772 (2015). "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006). "[T]o sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

But theories of quantum meruit and unjust enrichment rarely have a role to play in disputes between unmarried couples. Under Michigan law, "[t]hose engaged in meretricious relationships do not enjoy property rights afforded a legally married couple." *Featherston v Steinhoff*, 226 Mich App 584, 588; 575 NW2d 6 (1997). Here, the parties were involved in a meretricious relationship that did not result in marriage, so we will only "enforce an agreement made during the relationship upon proof of additional independent consideration." *Id*. Moreover, "[t]his Court will not allow recovery based on contracts *implied in law or quantum meruit* because to do so would essentially resurrect common-law marriage." *Id*. (emphasis added). Indeed, the "services rendered during a meretricious relationship are presumably gratuitous[,]" *id*. at 589, so plaintiff must bear the burden of rebutting that presumption. *Id*. To do so, "plaintiff must show that [he] expected compensation from defendant at the time [he] rendered services for defendant and that defendant expected to pay for them." *Id*. at 591. The record unmistakably reveals that plaintiff cannot meet that burden.

But plaintiff can rely upon a contract theory if he and defendant entered into an enforceable agreement that was "either express or implied in fact." *Id*. at 588. The record, however, is bereft of evidence of an express agreement that was supported by "additional independent consideration."

*Id.* Plaintiff seems to suggest that he and defendant had an agreement implied in fact, citing *In re Lewis Estate*, 168 Mich App 70, 74-75; 423 NW2d 600 (1988), to support that concept. As *In re Lewis* explains, a "contract implied in fact arises 'when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor.' " *Id.* at 75. In this case, plaintiff furnished money and work on the two homes when he and defendant were in a meretricious relationship, yet he made no request for compensation until after defendant ended the relationship. The timing of plaintiff's demand speaks volumes about whether the parties entered into a contract implied in fact. As we have observed, "[w]here the parties do not explicitly manifest their intent to contract by words, their intent may be gathered by implication from their conduct, language, and other circumstances attending the transaction." *Featherston*, 226 Mich App at 589. Here, the circumstances attending the transaction leave no doubt that the parties did not intend to enter into any contract. And, in any event, formation of such a contract would require "additional independent consideration[,]" *id.* at 588, which simply cannot be found under Michigan law in this case. See *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 101; 878 NW2d 816 (2016) ("for consideration to exist, there must be a bargained-for exchange"). Thus, the trial court correctly granted summary disposition under MCR 2.116(C)(10) to defendant on plaintiff's claims for quantum meruit and unjust enrichment.

## C. JOINT BANK ACCOUNT

Finally, plaintiff argues that the trial court should have granted partial summary disposition to him with respect to defendant's liability for using commingled funds in the joint account to buy the second home. Pursuant to MCL 487.703, parties hold the funds in a joint bank account as joint tenants. See *Lewis Estate v Rosebrook*, 329 Mich App 85, 95; 941 NW2d 74 (2019). "[T]he law presumes that joint tenants are equal contributors, have equal ownership shares, and have equal rights to access and use the funds." *Id.* at 96. This Court has recently stated that such joint tenants have "the right, under the statute as well as general principles governing joint tenancies, to access some or all of the funds in the accounts." *Id.* at 101.

The record reveals that defendant inherited approximately $80,000 when her grandfather died in 2020. Defendant informed plaintiff that she had received the inheritance money, that the money had been transferred by wire into the couple's joint bank account, and that she planned to use the money for a down payment on the home at 8765 County Road 550. Plaintiff had no role in the purchase of the home, which was titled solely in defendant's name in April 2020.[1] Without question, defendant's $80,000 inheritance passed through the parties' joint account on its way to serve as the initial payment for the home. As a result, plaintiff argues that he is entitled to half of that inherited amount, i.e., $40,000, and he cites *Lewis Estate*, 329 Mich App 85, as authority for his claim.

The parties in the *Lewis Estate* case, Robert Lewis and Carol Rosebrook, "were a couple for approximately 24 years, living and socializing together, though they never married[,]" and they opened joint bank accounts "to pay their ordinary day-to-day expenses, sometimes consulting each

---

[1] Defendant bought the home on a land contract that did not include plaintiff's name. Plaintiff has conceded that he did not sign the land contract, so only defendant was bound by that agreement.

other and sometimes not, depending on the nature and amount of the expense." *Id*. at 89. When the parties ended their relationship, "they agreed to a 30-day period to sort out their affairs." *Id*. During that 30-day period, Lewis tried without success to freeze the joint accounts he had opened with Rosebrook. *Id*. at 89-90. Soon after, Rosebrook transferred $255,000, or substantially all of the funds in the three accounts, to her own accounts. See *id*. at 90. Lewis did not consent to those transfers and had no knowledge of them. *Id*. Instead, he and his conservator filed suit to recover the $255,000 that Rosebrook had transferred. We concluded that, although Rosebrook had a legal right "to access some or all of the funds in the accounts[,]" see *id*. at 101, that right did not permit her to "access and appropriate the entire corpus of the accounts for [her] own use." *Id.* at 102. We stated that, "in a dispute involving a joint account, the 'realities of ownership' control 'as to the title to the moneys,' " *id.* at 105, and "that a depositor may, under certain circumstances, withdraw all of the funds and revoke a joint account during the depositor's lifetime." *Id.*

The "realities of ownership" in this case and in *Lewis Estate* fall on opposite ends of the spectrum. In *Lewis Estate*, Rosebook entirely drained three joint bank accounts, taking the money for her own purposes. *Id.* at 90, 102. Here, defendant simply had $80,000 in her inheritance from her grandfather transferred by wire into the joint account and then she used those funds to make a payment on the home that she bought on a land contract. In *Lewis Estate*, the "three joint accounts were funded primarily, if not exclusively, by Lewis[,]" not Rosebrook. *Id.* at 90. Here, the $80,000 withdrawn from the joint account by defendant to buy the house came from her own inheritance.[2] In *Lewis Estate*, Rosebrook surreptitiously withdrew the money from the joint bank accounts. *Id.* Here, defendant informed plaintiff of her plan to use her inheritance before she made a withdrawal from the joint bank account. In *Lewis Estate*, Rosebrook withdrew all of the money from the joint bank accounts strictly for her own benefit. *Id.* at 90, 102. Here, defendant withdrew the money to buy a home that she chose to share with plaintiff. Finally, in *Lewis Estate*, the parties had ended their relationship before Rosebrook withdrew the money from the joint bank accounts. Here, defendant withdrew the money from the joint bank account while she and plaintiff were still in a romantic relationship. In sum, this case is nearly the exact opposite of *Lewis Estate* insofar as the "realities of ownership" are concerned. Accordingly, plaintiff cannot rely upon *Lewis Estate* to support his claim to a share of defendant's inheritance even though the money passed through the parties' joint bank account.[3] Therefore, defendant is entitled to summary disposition under

---

[2] Under Michigan law, normally, "property received by a married party as an inheritance, but kept separate from marital property, is deemed to be separate property not subject to distribution." *Dart v Dart*, 460 Mich 573, 584-585; 597 NW2d 82 (1999). Thus, even if plaintiff and defendant had been married, plaintiff would be hard put to assert a viable claim to the inheritance defendant received from her grandfather.

[3] In presenting his argument about the joint bank account, plaintiff refers to not only the inheritance of $80,000, but also an amount of $5,000 that he describes as his money. The record is murky, at best, on that sum, but a $5,000 withdrawal seems well within the range of amounts that the parties had the right to take from the joint bank account to address their living expenses. See *Lewis Estate*, 329 Mich App at 102 ("[T]he parties had established a practice over the years that each party could access and use funds in the accounts without consulting the other party, at least with respect to all but the most costly expenses.").

MCR 2.116(C)(10) on plaintiff's claim to one-half of defendant's $80,000 inheritance. Moreover, the trial court properly refused to permit plaintiff to amend his complaint under MCR 2.116(I)(5) because any amendment would have been "futile." See *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004).

Affirmed.

/s/ Christopher P. Yates
/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello